234 N.J. Super. 248 (1989)
560 A.2d 746
ESTHER CHALOM, PLAINTIFF,
v.
AMIR BENESH, AND DELUXE TRANSFER AND LIMO, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division Special Civil Part, Bergen County.
Decided April 5, 1989.
*252 Esther Chalom, plaintiff, pro se.
Vincent J. D'Elia for defendants.
HARRIS, J.S.C.

I. Preliminary Statement.
This is an action by an attorney against former clients which seeks recovery of legal fees allegedly earned, which remain unpaid. The clients were served with process, but failed to answer in a timely fashion; consequently, the attorney obtained a default judgment. The court is called upon to, not only vacate the default judgment, but also to invoke the stern remedy of dismissal because of the patent failure of plaintiff to comply with R. 1:20A-6. This rule, effective January 2, 1986, requires an attorney, prior to the institution of an action to recover a fee, to advise his or her client of the availability of an arbitration remedy for fee-dispute resolution, and to certify that such notice was given in the body of the complaint.
The case arises in the context of an order to show cause in aid of litigants' rights why a default judgment should not be vacated.[1] For the reasons which follow, the default judgment is vacated, execution and any levies thereunder are permanently *253 vacated, and the complaint is deemed amended in accordance with this opinion.

II. Procedural Posture of the Action.
On November 1, 1988, plaintiff filed a two-count complaint against defendants seeking recovery of $5,000 of unpaid legal fees. The summons and complaint were served by the clerk of the special civil part (utilizing certified and ordinary mail pursuant to R. 6:2-3(d)) on November 4, 1988 (as to defendant Amir Benesh) and on November 28, 1988 (as to defendant Deluxe Transfer and Limo, Inc.).
Defendants failed to respond to the complaint, and default was automatically entered by the clerk of the special civil part pursuant to R. 6:6-2 on November 28, 1988, as to both defendants, although service upon defendant Deluxe Transfer and Limo, Inc. is indicated as having occurred on that date.
On February 9, 1989, plaintiff applied to the clerk of the special civil part for a default judgment in accordance with R. 6:6-3(a). Plaintiff submitted an affidavit of non-military service together with her affidavit of proof indicating the factual basis for the entry of a default judgment. Although both the complaint and affidavit of proof revealed that plaintiff was owed more than $5,000, she expressly waived the excess in order to comply with the jurisdictional limits of the special civil part. See N.J.S.A. 2A:6-35(b). A default judgment was entered in favor of plaintiff in the amount of $5,000 plus costs.
A writ of execution pursuant to R. 6:7-1 was issued by the clerk of the special civil part and a levy upon assets belonging to one or both defendants was effectuated shortly thereafter by a court officer. See N.J.S.A. 2A:17-1 et seq.; N.J.S.A. 2A:17-57.
On February 24, 1989, defendants requested that an emergent order to show cause be signed to vacate the default *254 judgment on the ground that R. 1:20A-6 was violated.[2] The court treated the application as one in aid of litigant's rights seeking to control process for the enforcement of judgments issued under the auspices of the court. See R. 6:7; R. 1:10-5. It was not treated as an application for an injunction under R. 4:52 since the injunctive power of the special civil part is circumscribed by R. 6:3-1 and is limited to "injunctions as applicable in landlord/tenant actions."
Notwithstanding this seeming limitation on the court's ability to act, the power to stay proceedings is incidental to the court's inherent power to schedule disposition of actions so as to promote a fair and efficient adjudication. This can best be accomplished by a decision properly addressed to the sound discretion of the court. A stay of a proceeding, like many forms of preliminary injunction, is to be sparingly granted. It is an extraordinary remedy, for which the moving party must demonstrate a clear entitlement. Suenram v. Society Valley Hospital, 155 N.J. Super. 593 (Law Div. 1977).
The order to show cause was modified by the court to provide for a return date for argument. The form of the original order to show cause provided for instant, complete, and final relief without giving plaintiff an opportunity to present argument. As such, it plainly violated even the most rudimentary procedures of an order to show cause procedure. However, a modified order to show cause was signed by the court which granted emergent relief by vacating the levy and temporarily staying all further levies under the writ of execution. Plaintiff was also ordered to show cause why the complaint should not be dismissed, and the default judgment vacated.

III. Findings of Fact.
Plaintiff is an attorney admitted to practice law in New Jersey. As such, she is under an affirmative obligation to *255 follow the rules governing the courts of the State of New Jersey. On August 16, 1988, an "Employment/Retainer Agreement" was executed between plaintiff and defendant Amir Benesh. This agreement provided that plaintiff was to provide certain legal services for defendant Benesh at the hourly rate of $100. Although there does not appear to be any written agreement between plaintiff and the corporate defendant, plaintiff asserts that her legal services were on behalf of both defendants. Defendants claim that the legal services were performed only on behalf of the corporation.
Plaintiff alleges that she adequately performed legal services and is owed a net amount of $5,530.[3] In accordance with N.J.S.A. 2A:13-6, plaintiff apparently sent both defendants copies of her bills by certified mail, return receipt requested. It appears that such bills were received by defendants approximately two weeks before the institution of the within action.
On November 1, 1988, plaintiff filed her complaint. It is silent as to whether she notified her clients of their option to pursue the fee arbitration remedy as mandated by R. 1:20A-1 et seq. Furthermore, the complaint makes no allegation that the clients did not elect to pursue the fee arbitration remedy.
Defendant Benesh was apparently served with the summons and complaint on or about November 4, 1988. As a principal in the corporate defendant, he does not deny that the complaint was likewise served upon the corporation. Although they appear to have a meritorious defense to plaintiff's action, defendants have failed to satisfactorily explain why they did not file and serve an answer to the complaint. It was suggested that an answer was not filed because defendants' attorney *256 was attempting to resolve the matter by correspondence and telephone conversations with plaintiff.
On January 11, 1989, defendants' attorney requested in writing that plaintiff sign a stipulation extending time to answer. Although his request was illusory,[4] plaintiff was advised that her complaint did not appear to comply with the mandate of R. 1:20A-6. Thus, plaintiff was clearly forewarned that there was a potential defect in her pleadings. On the other hand, it is noteworthy that defendants, for all their demands for requiring fidelity to the rule, have yet to evince their intention to pursue the arbitration remedy.
Notwithstanding the entreaties of defendants' attorney, plaintiff applied for and obtained a default judgment in the face of a clear violation of R. 1:20A-6. Perhaps this was because defendants had not indicated their desire to utilize the fee arbitration forum and plaintiff considered the defense nothing more than extortion. On the other hand, plaintiff may have simply ignored the import of the rule, and blithely forged ahead to obtain her default judgment. Whatever the rationale, plaintiff acted contrary to the rule and she should not have proceeded to obtain a default judgment when she had previously been put on notice of a serious defect in her pleadings. The proper practice, albeit time consuming, would have been for plaintiff to have amended her complaint, have it served anew upon defendants, and proceed from there. Plaintiff took an inappropriate calculated risk by proceeding in the face of a manifest omission in her pleadings. She may not now be heard to argue that the mistake was excusable.
Defendants' attorney has submitted an affidavit of services which suggests that the value of his legal fees up to the time of the signing of the order to show cause was $360. See R.P.C. *257 3.7(a)(2). Defendants seek to shift the burden of paying those legal fees to plaintiff.

IV. Conclusions of Law.

A. The Role of R. 1:20A-6.

The spectacle of attorneys suing their former clients for fees has raised the hackles on many interested observers. In order to give clients an alternate and expeditious means of resolving fee disputes, the Supreme Court of New Jersey created district fee arbitration committees pursuant to R. 1:20A-1.
If requested in writing by a client, or if the client consents in writing to the attorney's request, a fee dispute is referred to a district fee arbitration committee for resolution. If an attorney has commenced an action to collect his or her fee, a client may, within 60 days of service of process, request that the fee dispute be referred to the arbitration process. R. 1:20A-3(b). When a default judgment has been obtained by the attorney prior to the timely filing of a request for fee arbitration by the client, a hearing by the committee shall be commenced within 30 days after the filing of a request for fee arbitration, unless good cause exists to extend the date for no more than 15 days. The committee determines the matter in accordance with R.P.C. 1.5.
The request for arbitration, if filed in response to pending litigation, must be accompanied by a stipulation that the litigation shall be stayed, and the amount of the fee as so determined by the committee shall be entered as a judgment in the action. In the instant case, defendants have not filed the required stipulation.
In order to assure that a client is made aware of its right to pursue the arbitration remedy, R. 1:20A-6 requires a pre-action notice to the client advising of the right to pursue the fee arbitration remedy as provided by the rules of court. Additionally, *258 the complaint is required to allege that the client was given notice of the availability of the arbitration remedy:
Prior to institution of an action to recover a fee, an attorney shall notice his client of the client's option to pursue the fee arbitration remedy as provided by these rules. If the client does not elect to pursue the fee arbitration remedy, the attorney's complaint shall allege the giving of notice required by this rule. [R. 1:20A-6]
The logic of this simple rule is obvious: the trained attorney must advise his or her client of an available alternate to litigation before pursuing a course of action that could accrue an unfair advantage to the attorney. The rule contemplates that the allegation of giving notice in the complaint is to be utilized once the client chooses not to employ the arbitration remedy. However, this alternative is not made available to the client if the attorney fails or refuses to advise the client of its existence. The rule is intended to act as a failsafe checkpoint to ensure compliance with the notice requirement. In the instant case plaintiff has concededly failed to give this required notice. What, then, are the consequences of going forward in the face of such a defective pleading?
R. 1:1-2 permits a court rule to be relaxed where "adherence to it would result in an injustice." Similarly, the court rules are to be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense or delay. If R. 1:20A-6 were to be relaxed in the confines of the instant case, such relaxation would result in exactly the opposite of what R. 1:1-2 seeks to achieve.
If an attorney were to prosecute an action in violation of R. 1:20A-6 either because the attorney did not advise his or her clients of the arbitration remedy or because he or she did not allege the giving of notice, the attorney would be unilaterally taking advantage of the very class which R. 1:20A-6 seeks to protect. This perversion would rob clients of the right to be advised of the arbitration remedy and would deprive them of learning that their attorney has alleged that the proper notice was given. Any relaxation here would foster potential abuses *259 in the future and drain the rule of its salutary purposes.[5]

B. Should the Default Judgment be Vacated?

R. 4:50-1 is a repository of equitable power to do justice in a particular case. Although studded with various subsections, the rule's major provision allows relief from a judgment where the defaulting party can show a meritorious defense to the action, and satisfy the court that the failure to plead was the result of excusable neglect. Alternatively, in situations which actualize the court's conscience, R. 4:50-1(f) permits relief from a judgment where the facts and circumstances do not fall neatly into one of the rule's five other categories. In the instant case, it is the application of R. 4:50-1(f) that justifies the vacation of the default judgment.
Notwithstanding plaintiff's patent violation of R. 1:20A-6, defendants made no effort to properly respond to the complaint until execution was issued and a levy upon their assets was accomplished. Defendants' new attorney was attempting to negotiate an impermissible consent to extend defendants' time to answer as early as January 1989, but no logical excuse has been advanced why defendants did not answer the complaint when it was served in early November 1988. This is not a case involving insurance coverage with its concomitant carrier defense which has built-in delays that militate against timely filing of an answer. On the contrary, this is a case which should have impelled defendants to obtain counsel instantaneously, given the nature of the status of plaintiff as their former attorney. Nevertheless, defendants did nothing until plaintiff moved against their property. Sometimes it is only by this means that a plaintiff can impel a defendant to wake up and *260 defend. Here, however, plaintiff knew before she applied for her default judgment that defendants were represented and she knew of the deficiency in her complaint. To proceed thereafter in the face of such compelling circumstances is nearly inexcusable.
The purpose of R. 4:50-1(f) is to grant relief only in exceptional cases which do not fit within the confines of other rule provisions, but its boundaries are as expansive as the court's discretion to achieve equality and justice. See Morales v. Santiago, 217 N.J. Super. 496 (App.Div. 1987). Furthermore, the opening of a default judgment is viewed with great liberality and every reasonable ground for indulgence is to be tolerated to the end that justice is accomplished. Foster v. New Albany Machine & Tool Co., 63 N.J. Super. 262 (App.Div. 1960).
On the other hand, a court should carefully balance the requirement of diligence and timeliness against the detriment to be suffered by defendant if the default judgment is not vacated. Some cases suggest that a stringent test be applied, and refuse relief under R. 4:50-1(f) absent a showing of extreme hardship or clear inequity. In Matter of Wehrhane Estate, 149 N.J. Super. 41 (Ch.Div. 1967); Greenberg v. Owens, 31 N.J. 402 (1960).
In this case defendants have claimed only inferential hardship insofar as they were denied notice under R. 1:20A-6. The irony is that defendants have yet to invoke the rule's provisions to elect the arbitration remedy. Without such election, defendants are estopped from claiming the pleading defect as a basis for vacating the judgment. If defendants do not intend to pursue the arbitration remedy, and if they never intended to pursue it, the stratagem of advancing this red herring issue to avoid an otherwise valid judgment ought to be condemned.
Notwithstanding this obvious dilemma, it is the court's responsibility to ensure fidelity to the rules, even if the parties who precipitated the inquiry are estopped from advancing them. Cf. R. 1:18. If R. 1:20A-6 were allowed to be ignored, unscrupulous attorneys wishing to collect fees would be able to *261 gamble on their clients' ignorance, fail to follow the mandated notice procedure, and dispense with the requirement of alleging that notice of the arbitration remedy was given. In this way, they could escape penalty if the client ultimately decided not to pursue the arbitration remedy. The commendable purpose of the rule must not be lost by the fortuitousness of whether defendants decide, as a matter of their litigation strategy, to choose arbitration.
In light of the foregoing, and after balancing the conduct of both sides, it is apparent that at the very least, the judgment must be vacated, allowing defendants to plead and defend. Presently, the complaint is defective as a matter of law where it fails to comply with R. 1:20A-6. Nevertheless, it is susceptible to amendment under R. 4:9-1 by the simple addition of one or more paragraphs.[6] As such, the complaint shall be deemed amended by the addition of the allegation that defendants have been notified of their right to pursue the arbitration remedy as of today's date. The remedy ordered by the court should not be considered the sole manner of treating violations of R. 1:20A-6. Judges and clerks of the court should be vigilant in scrutinizing complaints in all actions for a fee by an attorney to ensure that R. 1:20A-6 has been followed. If it has not been followed, a default judgment may not be entered, nor may any other proceeding continue, until the complaint is amended and defendants have been given notice of the availability of the arbitration remedy.

C. Imposition of Attorneys Fees, Sanctions, or Conditions.

Defendants seek counsel fees or other sanctions for the expenses of prosecuting the proceedings to vacate the default judgment. The only basis for allowing counsel fees or sanctions is under the auspices of a statute or rule. General *262 equitable principles are an insufficient foundation upon which to reallocate the expense of legal fees.
Although R. 1:10-5 ordinarily applies only in situations where a party seeks to enforce the provisions of a judgment, the rule may also be used in limited circumstances to obtain relief on behalf of a litigant who is aggrieved by a judgment, especially in emergent situations.
The special civil part has no injunctive powers except such incidental powers under R. 4:52 as are applicable in landlord/tenant actions. See R. 6:3-1. Thus, it is apparent that for the special civil part to exercise emergent powers touching upon injunctive relief, it must find a reservoir of such power outside the inherent power of the court to enforce and control its own judgments. That reservoir is R. 1:10-5 which permits the expedited order to show cause procedure to be utilized, and which is consistent with its purpose of enforcing and controlling judgments or orders of the court. As such, it is appropriate to look to R. 1:10-5 to ascertain whether plaintiff is chargeable with any or all of defendants' counsel fees on the application.
The allocation of counsel fees under R. 1:10-5 is addressed to the sound discretion of the court. The elements to be considered are the reasons for, and necessity of, making the application; the conduct of the parties; the result achieved; the reasonableness of the fee; and the danger to the integrity of R. 4:42-9 if fees are awarded. Although the general rule under R. 4:42-9 continues to require each party to bear his or her own expenses, see, e.g., Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206 (App.Div. 1965), aff'd 44 N.J. 450 (1965); Gerhardt v. Continental Ins. Co., 48 N.J. 291 (1966), R. 1:10-5 recognizes a limited class of instances where it would be inequitable to apply this monolithic rule.
In this situation the court finds the conduct of plaintiff and defendants bereft of fair play. Each has been trying to gain an unfair advantage. Plaintiff was under an affirmative obligation to comply with R. 1:20A-6 and failed to accomplish this simple task. However laudable the result will be in compelling *263 fidelity to that rule in the future, defendants have clearly advanced this argument purely for tactical purposes. By not choosing the arbitration remedy, they have exhibited a moral bankruptcy that can not be used to bootstrap them into an award of counsel fees. Had defendants insisted upon a vacation of the default judgment or stay of execution to enable them to pursue their arbitration remedy, it is quite likely that counsel fees might have been awarded for the expense of obtaining such relief. Where, however, the reason for the expedited procedure under R. 1:10-5 was not to enable defendants to utilize the arbitration procedure of which they claimed they were not given notice, defendants may not now be heard to demand payment of their fees. Defendants choice to utilize R. 1:10-5 instead of an ordinary motion under R. 1:6-3 (for which counsel fees are awardable only in extremely limited circumstances, not here pertinent[7]) is explainable solely by reference to their perceived detriment as a result of the levy. Were it not for her violation of R. 1:20A-6, plaintiff's default judgment may well have remained intact, thereby disqualifying defendants from any entitlement to counsel fees.
On the other hand, the vacation of a default judgment may be conditioned upon "terms as are just." R. 4:50-1; see also John Reiner & Co. v. Dorsey Roofing Co., 187 N.J. Super. 51, 53 (Law Div. 1982). In this case, plaintiff expended time, energy, and money to obtain her default judgment. Unfortunately, it was voidable because of her failure to comply with R. 1:20A-6. Even in the absence of that defect, defendants might have qualified to vacate the default judgment under the general principles of liberality accorded the vacation of default judgments. Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd 43 N.J. 508 (1964). In such a circumstance it might have been appropriate to condition the vacation upon payment of the reasonable fees expended to obtain the default judgment. Here, however, the court will not *264 reward an attorney-plaintiff who violates the clear mandate of R. 1:20A-6. This is especially true where plaintiff proceeded to obtain the default judgment after the manifest deficiency in her complaint was brought to her attention.
Needless to say, the court has determined that wrongdoing flowed from both plaintiff and defendant. The one innocent participant in this case appears to be the court officer who effectuated the levy which precipitated the instant proceeding. N.J.S.A. 22A:2-38 provides that court officers are entitled to a fee upon a valid and subsisting levy. The fee is taxed in costs and calculated on a percentage basis, according to the amount collected.[8] If a judgment upon which an execution has issued and a levy is made, is later vacated, the court officer is not entitled to his commission. However, if the judgment is reinstated, there is no sound reason for denying the court officer his fee simply because a judgment debtor may by then deplete assets which were once available to compensate the judgment creditor and court officer. Indeed, in this case, it was the efforts of the court officer which precipitated the instant proceeding and brought defendants to court for the first time. As between plaintiff and defendants, given the purely tactical use of R. 1:20A-6, defendants' culpability for the potential loss of the court officer's commission is greater than plaintiff's.
Thus, in order to protect the commission which will clearly be earned if plaintiff prevails on the merits in this matter, defendants shall deposit with the clerk of the special civil part the sum of $300 which represents the maximum amount of commission which the court officer would have been entitled in this matter. If defendants prevail in this matter, then the court officer will not be entitled to any commission. If plaintiff obtains a judgment or the matter is settled by the payment to plaintiff of an amount less than $5,000, the court officer will be entitled to resort to the deposit for his commission, calculated *265 upon the amount to which plaintiff is entitled. Thus, if plaintiff obtains a judgment for $4,000, but by that time there are no assets of defendants from which payment of the judgment may be derived, the court officer will nevertheless be entitled to a commission of $250 (10% of $1,000 plus 5% of $3000). Naturally, if plaintiff actually receives $4,000, even if through the court officer's later efforts, the court officer will not be entitled to a double commission.
The court will not require defendants to deposit with the clerk of the special civil part the amount levied upon as a condition of vacating the default judgment. Plaintiff will not be thus elevated into the position of a secured creditor, a position for which she never bargained. John Reiner & Co., Inc., supra, 187 N.J. Super. at 54. Moreover, a court-ordered deposit, like an attachment, is an extraordinary equitable remedy for which plaintiff is unentitled due to her unclean hands. AC-Berwick Transporters, Inc. v. Sendell, 176 N.J. Super. 339 (Ch.Div. 1980).

V. Conclusion.
Based upon the foregoing, defendants' application to vacate the default judgment is granted on the condition that defendants deposit the sum of $300 with the clerk of the special civil part within 10 days of today's date. Plaintiff's complaint shall be deemed amended nunc pro tunc to include an allegation that defendants have been advised of their right to the arbitration remedy under R. 1:20A. Defendants shall file and serve their answer on or before 14 days from today's date. Defendants shall elect to pursue arbitration under R. 1:20A within 60 days of today's date. Failure to plead or otherwise move shall result in the automatic entry of a default under R. 6:6-2 and plaintiff shall thereafter be entitled to proceed to obtain another default judgment.
NOTES
[1] The court, on its own initiative, considered whether the complaint should be dismissed.
[2] The application also sought the imposition of counsel fees under an unspecified equitable theory.
[3] Included in this amount is $30 for service charges imposed because of defendants' "bounced checks." Plaintiff does not include contractual interest "at the rate of 1% per month of the unpaid balance" for bills remaining unpaid for 30 days.
[4] R. 6:3-1 precludes the practice of extending the time for response by consent. Cf. R. 4:6-1(c).
[5] This is not to suggest that attorneys would deliberately use a loophole created by R. 1:1-2 to obtain unfair judgments from their clients. Nevertheless, when attorneys enter the mercantile arena of suing their clients for fees, it is an all too-often observed phenomenon that parochial business interests sometimes prevail over the ethical responsibility to make full disclosure under R. 1:20A-6.
[6] Defendants shall have 60 days from today's date to request arbitration. See R. 1:20A-3(b).
[7] See, for example, R. 4:23.
[8] The court officer's so-called "dollarage" is 10% on the first $1,000 collected, and 5% on the balance collected.