670 A.2d 527

MICHAEL A. SAFFER, AS A FORMER MEMBER OF KLEIN CHAP-
MAN, A PARTNERSHIP, PLAINTIFF–RESPONDENT, v. WIL-
LIAM W. WILLOUGHBY, JR., DEFENDANT–APPELLANT.

Argued October 24, 1995—Decided February 5, 1996.

*Jeffrey A. Donner* argued the cause for appellant (*Shain, Schaffer & Rafanello,* attorneys).

*Leonard A. Peduto, Jr.,* argued the cause for respondent (*Chapman, Henkoff, Kessler, Peduto & Saffer,* attorneys; *Mr. Peduto* and *Patricia A. Cauldwell,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This case involves a fee dispute between an attorney and a former client. The former client filed a request for fee arbitration with the District XI Fee Arbitration Committee (Fee Committee). Six months after filing the request, and before a decision was reached, the client discovered evidence that convinced him to file a legal malpractice action in the Law Division against his former attorney. The client, represented by new counsel, presented evidence of the alleged malpractice to the Fee Committee. He argued that a negligent attorney was not entitled to collect a fee.

The case requires us to determine the appropriate procedure a Fee Committee should follow when the basis for a legal malpractice claim is discovered after the time permitted for withdrawing an arbitration request has expired. The Appellate Division de-

clined to grant any relief. We granted certification, 140 *N.J.* 326 (1995), and stayed the judgment.

We hold that under the unique circumstances of this case and the controlling rules in effect during the arbitration, the Fee Committee should have granted the client a thirty-day window of opportunity after discovery of the alleged malpractice to withdraw the request for arbitration. In the absence of that opportunity for Willoughby to withdraw the request for arbitration, the Appellate Division should have stayed the fee award pending disposition of the legal malpractice complaint.

## I

Defendant William W. Willoughby, Jr., is a former professional basketball player who played for various teams in the National Basketball Association from 1975 through 1984. During that time, Willoughby retained the services of All-Pro Reps, Inc. (All-Pro), and its principals, Jerry Davis and Lewis Scheffel, as agent and business manager, respectively.

For most of his career, Willoughby arranged for All-Pro to receive a portion of his earnings with the expectation that the funds would be invested on his behalf. Davis and Scheffel, however, diverted most of the money, without Willoughby's authorization, into tax shelters. Approximately $1 million of Willoughby's money was lost.

Davis brought an action against Willoughby, alleging that he was owed $129,000 in fees. Willoughby retained Michael A. Saffer, Esq. to represent him in the litigation. Saffer asserted counterclaims against Davis, alleging breach of fiduciary duty and misappropriation of funds. When Willoughby requested Saffer to implead Scheffel as a third-party defendant with respect to the counterclaims, Saffer refused. Saffer stated there was no evidence to support Scheffel's involvement in the scheme to mishandle Willoughby's money.

A jury awarded Willoughby $768,047.84 in compensatory damages and $100,000 in punitive damages on the counterclaim. The Appellate Division affirmed but reduced the award to $750,957.78. Less than one month after the verdict against him was rendered, Davis filed a petition under Chapter 11 of the Bankruptcy Code. Consequently, Willoughby was able to collect only $150,000 of the total judgment and has little hope of collecting any more.

After Davis filed his petition in bankruptcy, Saffer withdrew his representation of Willoughby due to Willoughby's failure to pay Saffer's legal fee. Willoughby alleged that Saffer breached their original fee agreement and billed at excessive rates and for duplicative work. Willoughby retained new counsel who filed a request for arbitration of Saffer's fee with the Fee Committee for Passaic County.

During the course of the arbitration, Willoughby and his new lawyer reviewed Saffer's file on the Davis–Willoughby litigation. The file contained a copy of a promissory note signed by Scheffel that allegedly tied Scheffel to the misappropriation of Willoughby's earnings. Willoughby alleges that Saffer intentionally or negligently withheld this evidence when he advised Willoughby that there was no legal basis for impleading Scheffel. Willoughby further alleges that had Scheffel been held jointly liable for the judgment, Willoughby would have been able to collect the full amount of his damages from Scheffel.

Willoughby's new lawyer presented evidence of the alleged malpractice to the Fee Committee at its next scheduled hearing, arguing that an attorney who commits malpractice is not entitled to a fee. Additionally, the lawyer filed, on Willoughby's behalf, a malpractice complaint in the Law Division on May 17, 1993, claiming as damages the difference between the full amount of the judgment against Davis and the amount he had been unable to collect.

The Fee Committee rendered its decision on August 11, 1993. It found that Saffer met his burden of proving the reasonableness of his fee based on the criteria set forth in the *Rules of Profes-*

*sional Conduct (RPC)* 1.5. It is unclear, however, whether, or to what extent, the Fee Committee considered Willoughby's malpractice claim against Saffer when rendering its award. Saffer and his firm were awarded a total fee of $120,000, of which $103,510 remains unpaid.

When Saffer sought confirmation of the award and entry of a judgment, Willoughby filed a motion for a stay pending disposition of the legal malpractice complaint. The Law Division on December 20, 1993, denied Willoughby's application for a stay, confirmed the award, and entered final judgment for Saffer in the sum of $103,510 with interest. The Appellate Division affirmed, holding that the pending malpractice action did not satisfy any of the statutory grounds to vacate an arbitration award under *N.J.S.A.* 2A:24–8.

## II

### –A–

The procedure for arbitration of attorney's fees has been in place in New Jersey since 1978. The policy underlying the fee arbitration system is the promotion of public confidence in the bar and the judicial system.

> If it is true—and we believe it is—that public confidence in the judicial system is as important as the excellence of the system itself, and if it is also true—as we believe it is—that a substantial factor that erodes public confidence is fee disputes, then any equitable method of resolving those in a way that is clearly fair to the client should be adopted.... The least we owe to the public is a swift, fair and inexpensive method of resolving fee disputes.
>
> [*In re LiVolsi*, 85 *N.J.* 576, 601–02, 428 *A.*2d 1268 (1981).]

*Rules* 1:20A–1 to –6 govern the fee arbitration process. Substantial revisions to those rules were adopted on January 31, 1995, and became effective on March 1, 1995. Although the old rules were in effect for the Willoughby–Saffer arbitration, the new rules are relevant to the question of what impact, if any, this appeal will have on the fee arbitration process.

■ The State is divided into districts, each of which has its own Fee Committee. A request for arbitration is handled by the district in which the attorney practices. When a client requests fee arbitration, participation by the attorney is mandatory. *R.* 1:20A–3. Before an attorney can file suit against a client to recover a fee, the attorney must notify the client of the availability of fee arbitration. *R.* 1:20A–6; *Chalom v. Benesh,* 234 *N.J.Super.* 248, 257–58, 560 *A.*2d 746 (1989).

The District Fee Arbitration Committees have limited jurisdiction. "Each fee committee shall, pursuant to these rules, have jurisdiction to arbitrate fee disputes between clients and attorneys." *R.* 1:20A–2(a). The attorney has the burden of proving the reasonableness of the attorney's fee by a preponderance of the evidence. *R.* 1:20A–3(b)(1). The determination of reasonableness is based on the factors set forth in *RPC* 1.5. *Ibid.* Those factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[*RPC* 1.5.]

*Rule* 1:20A–1(e) provides, "[a] Fee Committee shall not render advisory opinions." The determination of the committee is binding and generally cannot be appealed on the merits. *Rule* 1:20A–3(c) states that a determination by the committee is not appealable absent failure of a committee member to be disqualified, failure of the committee to follow the rules, or actual fraud by a committee member. The new rules, however, add an additional ground for appeal: "a palpable mistake of law by the fee committee which on its face was gross, unmistakable, or in manifest disregard of the

applicable law, which mistake has led to an unjust result." *R.* 1:20A–3(c)(4).

■ The policy reasons for restricting the grounds for appealing the determination of a Fee Committee are the same as those underlying the creation of the procedure in the first place: to provide a "swift, fair and inexpensive method of resolving fee disputes" and "protect clients who can ill afford the time and expense of defending a Committee judgment on appeal." *In re Livolsi, supra,* 85 *N.J.* at 602, 428 *A.*2d 1268.

Withdrawal from arbitration by the client is only permitted within thirty days after the request for arbitration is docketed by the secretary of the Fee Committee. *R.* 1:20A–3(b)(1). Prior to the 1990 amendments to the rules, however, a client could withdraw from arbitration at any time up to the commencement of the hearing. The thirty-day provision was added to protect both the members of a Fee Committee and the attorneys. The prior situation was considered to be unfair to Fee Committee members who volunteer their time. Last minute withdrawals waste their time and money. Last minute withdrawals were also unfair to the attorney. A client could delay paying a bill, file a request for arbitration after the attorney served the client with notice of intent to sue for the fee, and then withdraw from the arbitration at the last minute. Commentary to *Rule* 1:20A–3; 125 *N.J.L.J.* 730 (1990). The purpose of the thirty-day rule is to minimize such dilatory tactics.

–B–

■ The facts of this case require us to focus on whether the rules permit a Fee Committee to arbitrate the merits of a malpractice claim when evidence of malpractice is presented to a Fee Committee.

A Fee Committee has jurisdiction only "to arbitrate fee disputes between clients and attorneys." *R.* 1:20A–2(a). The rules specifically provide that the "fee committee shall not have jurisdiction to

*decide* ... claims for monetary damages resulting from legal malpractice, although a fee committee may consider the quality of services rendered in assessing the reasonableness of the fee pursuant to *RPC* 1.5." *R.* 1:20A–2(c)(2) (emphasis added).

A Fee Committee is expected to decline to hear any matter "in which the primary issues in dispute raise substantial legal questions in addition to the basic fee dispute...." *R.* 1:20A–2(b)(3). The manual provided by the Office of Attorney Ethics to Fee Committee members states that attorney malpractice presents such a question. It provides:

> Fee Committees generally should not pass on constitutional or other substantial legal issues because their decisions are, practically speaking, unappealable. Moreover, Fee Committees are primarily created to render fair and fast decisions. They are not designed to hear two-week long cases where the client's defense to a $40,000 fee is that the lawyer is guilty of malpractice, a substantial legal issue. [Office of Attorney Ethics of the Supreme Court of New Jersey, *District Fee Arbitration Committee Manual for Committees Appointed by the Supreme Court of New Jersey* 26 (1993).]

In addition, a pamphlet provided to clients inquiring about fee arbitration states, "when the primary issues in dispute raise substantial legal questions in addition to the basic fee dispute, such as a claim of legal malpractice, the fee committee may decline to hear the case." Office of Attorney Ethics of the Supreme Court of New Jersey, *Information About the Supreme Court of New Jersey's Attorney Fee Arbitration System* (1993), *reprinted in District Fee Arbitration Manual, supra,* at 56–57.

■■■■ We interpret the rules to mean that a Fee Committee lacks jurisdiction to decide legal malpractice claims. But the filing of a malpractice claim does not, however, deprive the Fee Committee of jurisdiction to decide the fee dispute. In the course of deciding the reasonableness of a fee, a Fee Committee may consider evidence of malpractice for the limited purpose of affecting "the quality of services rendered in assessing the reasonableness of the fee pursuant to *RPC* 1.5." *R.* 1:20A–2(c)(2).

■■ The rules contemplate that malpractice claims are to be filed in and adjudicated by the Superior Court. Even when

malpractice evidence is considered by a Fee Committee for the limited purpose of affecting the quality of the services rendered, neither the evidence submitted to a Fee Committee nor the "decision or settlement made in connection with a fee arbitration proceeding shall be admissible evidence in a legal malpractice action" in the Superior Court. *R.* 1:20A–2(c)(2)(B).

–*C*–

█ Although the Fee Committee continued to have jurisdiction to decide the fee dispute after the malpractice claim was raised before the Fee Committee, as well as after the malpractice complaint was filed with the Superior Court, Willoughby asserts that he would not have requested arbitration in the first instance had he known about the malpractice at that time. When the alleged malpractice was discovered, the thirty-day deadline for withdrawal of the request had already expired. *See R.* 1:20A–3(b)(1). The essence of his objection to proceeding with arbitration after discovery of a basis to allege malpractice was that unless the arbitration award was stayed, he would be compelled to pay a fee for services that involved malpractice.

In denying his request for a stay, the Appellate Division observed that Willoughby "elected the arbitration forum and continued in that forum even after the malpractice complaint was filed." Those facts should not have prejudiced the application for a stay because the provisions of *Rule* 1:20A, in existence in 1993, did not preclude processing both claims simultaneously. The 1995 version expressly permits simultaneous processing of a malpractice claim in the Superior Court while proceeding with fee arbitration. *R.* 1:20A–2(c)(2)(A).

Beyond that, Willoughby was not allowed to withdraw his request for arbitration when he discovered the basis for a malpractice claim because the thirty-day period in which he could have withdrawn his request for arbitration had expired. Unless the client is permitted to withdraw from arbitration or the arbitration award stayed, the client can be compelled to pay the lawyer's

fee while contending in a legitimate malpractice case that the lawyer's malpractice bars collection of the entire fee awarded. That is precisely Willoughby's claim since he was unable to withdraw from arbitration or obtain a stay of the fee award. Willoughby does not wish to pay even a reasonable fee to Saffer unless the malpractice claim has been concluded in a manner that does not extinguish the fee award.

■ We establish the following procedure to resolve the dilemma in which Willoughby finds himself. When during the pendency of a fee arbitration and after the thirty-day period for withdrawal has elapsed, a client discovers a substantial malpractice claim against the former lawyer, we direct the Fee Committee, pursuant to *Rule* 1:1–2, to relax *Rule* 1:20A–3(b)(1) to permit the client to have a new thirty-day window of opportunity to withdraw the request for arbitration. The window of opportunity commences the day the client discovers the substantial malpractice claim within the meaning of *Grunwald v. Bronkesh*, 131 *N.J.* 483, 494, 621 *A.*2d 459 (1993). *Rule* 1:20A–3(b)(1) will not be relaxed, however, if the basis for a substantial malpractice claim is known to the client before the thirty-day withdrawal period expires.

■ If the substantial basis for a malpractice claim is discovered after a Fee Committee has awarded a fee, a client may seek a stay of the award from the Superior Court either before or after the award has been confirmed. The trial court shall first determine whether a substantial claim of malpractice exists, and if so, then grant a stay of the arbitration award on terms and conditions fixed by the court pursuant to *Rule* 2:9–5. Because the fee awarded is often tightly intertwined with the legal malpractice claim, posting of a bond or cash as a condition of the stay should not ordinarily be required. In the present case, the fee awarded was deposited with the Superior Court Clerk. Also, if Willoughby prevails, his recovery may be substantially greater than the fee awarded.

We direct that the arbitration award be stayed pending disposition of the already filed malpractice complaint. Ordinarily, filing

of the malpractice complaint should be a precondition to granting a stay of a fee award.

### III

Next we examine the impact the fee awarded will have on any malpractice verdict. Willoughby stipulated during oral argument that if a jury exonerates Saffer, he agrees that the arbitration award is fair and reasonable. He contends that if a jury finds malpractice, however, Saffer should be precluded from recovering any fee proximately related to his negligence. Another aspect of that issue is whether the legal fees and expenses expended to recover a favorable verdict against Saffer should be deemed consequential damages. Stated another way, if Saffer committed malpractice, should he be permitted to recover any of the arbitration award?

The general rule in some jurisdictions permits a lawyer who rendered negligent services to collect his or her reasonable fee less damages sustained by the client.

> A client may recover the actual damages sustained by an attorney's malpractice, negligence, or wrongful act. In the case of malpractice or negligence the liability of the attorney is limited to the damages directly and proximately caused by his [or her] conduct.
>
> [7A *C.J.S.* § 273a.]

One commentator has observed:

> There has been much debate as to whether the damages are reduced by what the attorneys' fees would have been in the underlying action. The earlier cases hold that such fees are to be deducted since the plaintiff was neither entitled to nor anticipating such recovery without a deduction for the attorneys' fees. However, the recent cases holding otherwise have clearly indicated that the potential fee that the attorney would have recovered is not deductible. Thus, the client receives, at least in the eyes of some, a windfall benefit which the courts may feel is deserved by the client having to endure two lawsuits.
>
> [David J. Meiselman, *Attorney Malpractice: Law and Procedure* § 4:3 (1980).]

In the few reported fee cases, courts have held that a client's recovery in a malpractice action should be reduced by the fee to which the attorney would have been entitled had the matter been handled competently. Those courts did not apply the doctrine of

*quantum meruit,* but instead reasoned that any recovery gained "would have been subject to the contingent fee basis" anyway. *E.g., McGlone v. Lacey,* 288 *F.Supp.* 662, 665 (S.D.1968); *Sitton v. Clements,* 257 *F.Supp.* 63, 65 (E.D.Tenn.1966), *aff'd,* 385 *F.*2d 869, 870 (6th Cir.1967).

The majority of courts addressing the issue recently have held otherwise. Those courts found that an attorney is not entitled to deduct from the amount due the client a sum representing the legal fee to which the attorney would have been entitled had the matter been competently handled. Those courts reasoned that the additional legal fees that a client typically incurs in pursuing the malpractice action cancel out any fee that the plaintiff would have owed the negligent attorney had that attorney provided competent services. *Kane, Kane & Kritzer, Inc. v. Altagen,* 165 *Cal.Rptr.* 534, 538, 107 *Cal.App.*3d 36 (Ct.App.1980); *Winter v. Brown,* 365 *A.*2d 381, 386 (D.C.Ct.App.1976); *Christy v. Saliterman,* 288 *Minn.* 144, 179 *N.W.*2d 288, 307 (1970); *Campagnola v. Mulholland, Minion & Roe,* 76 *N.Y.*2d 38, 556 *N.Y.S.*2d 239, 242–43, 555 *N.E.*2d 611, 614–15 (N.Y.1990); *Foster v. Duggin,* 695 *S.W.*2d 526, 527 (Tenn.1985).

Two of those courts that adopted the majority rule further held that an injured client may recover the additional attorney's fees incurred in the malpractice action as consequential damages. *Winter, supra,* 365 *A.*2d at 386; *Foster, supra,* 695 *S.W.*2d at 527.

More recently, some courts have applied the doctrine of *quantum meruit* to determine a negligent attorney's fee. *Johns v. Klecan,* 198 *Ill.App.*3d 1013, 145 *Ill.Dec.* 71, 76, 556 *N.E.*2d 689, 694 (1990); *Forrester v. Dawalt,* 562 *N.E.*2d 1315, 1317–18 (Ind.Ct. App.1990); *Rocha v. Ahmad,* 676 *S.W.*2d 149, 156 (Tex.Ct.App. 1984). Additionally, the Supreme Court of Tennessee applied the doctrine of *quantum meruit* in determining whether the conduct of an attorney that amounted to a violation of a disciplinary rule warranted a forfeiture of the attorney's fee. *Crawford v. Logan,* 656 *S.W.*2d 360, 364–65 (Tenn.1983).

Following *Foster, supra,* the First Circuit Court of Appeals rejected the majority rule. *Moores v. Greenberg,* 834 *F.*2d 1105, 1109–13 (1st Cir.1987). That court held that "where counsel's efforts produced an offer which he then wrongfully failed to relay to the client, the settlement sum should be reduced by the amount of the lawyer's pre-agreed contingent fee (if readily ascertainable) in calculating damages for legal malpractice." *Id.* at 1113.

One commentator supports the application of the *quantum meruit* doctrine to cases involving attorney malpractice, and characterizes *Foster, supra,* and *Moores, supra,* as espousing "the new rule." Samuel J. Cohen, *The Deduction of Contingent Attorneys' Fees Owed to the Negligent Attorney from Legal Malpractice Damage Awards: The New Modern Rule,* 24 Torts & Ins.L.J. 751, *passim* (1989); *see* David A. Barry, *Legal Malpractice in Massachusetts: Recent Developments,* 78 *Mass.L.Rev.* 74, 78 (1993) (advocating a deduction of a lawyer's legal fees and expenses from a malpractice award).

 This Court has previously identified the broad standard to be applied. A client "may recover for losses which are proximately caused by the attorney's negligence or malpractice." *Lieberman v. Employers Ins.,* 84 *N.J.* 325, 341, 419 *A.*2d 417 (1980) (citations omitted). The purpose of a legal malpractice claim is "to put a plaintiff in as good a position as he [or she] would have been had the [attorney] kept his [or her] contract." *Ibid.*

Applying the principles articulated in *Lieberman, supra,* and following the majority rule in other jurisdictions, the Appellate Division in *Strauss v. Fost,* 213 *N.J.Super.* 239, 242, 517 *A.*2d 143 (1986), held that "a negligent attorney in the appropriate case is not entitled to recover his [or her] legal fees." The court refrained from establishing a hard and fast rule, but concluded that the "general rule should be that the negligent attorney is to be considered precluded from recovering his attorney's fee and, therefore, the total amount of the initial recovery [in the legal

malpractice action] would be awardable [to the plaintiff]." *Id.* at 243, 517 *A.*2d 143.

We adopt the reasoning and result reached in *Strauss.* Ordinarily, an attorney may not collect attorney fees for services negligently performed. In addition, a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action. Those are consequential damages that are proximately related to the malpractice. In the typical case, unless the negligent attorney's fee is determined to be part of the damages recoverable by a plaintiff, the plaintiff would incur the legal fees and expenses associated with prosecuting the legal malpractice suit.

Although the present case is exceptional, in that the alleged malpractice does not affect the judgment obtained by the attorney alleged to have committed malpractice, Willoughby is nonetheless entitled to reasonable expenses and attorney fees, as consequential damages, incurred in a successful malpractice prosecution. Because this is an exceptional case, if the consequential damages that are proximately related to the malpractice claim and the balance of the uncollectible judgment against Davis are awarded to and collected by Willoughby in the malpractice action, Saffer would be entitled to collect his fee. Willoughby concedes that the amount of Saffer's fee award is reasonable and should be paid under those circumstances.

## IV

Saffer also argues that the malpractice claim is without merit because the fee arbitration award conclusively means that there was no malpractice. In support of this proposition he cites *Altamore v. Friedman,* 602 *N.Y.S.*2d 894, 193 *A.D.*2d 240 (1993). In New York, however, unlike New Jersey, a final determination of an attorney's fee by an arbitration panel bars a client from bringing a subsequent malpractice action based on the reasoning that the fee award "necessarily included the finding of no malprac-

tice." *Id.* at 898–99, 193 *A.D.*2d 240. Such a conclusion is not warranted in New Jersey because a Fee Committee is without jurisdiction to decide a malpractice claim. *R.* 1:20A–2(c)(2).

The judgment of the Appellate Division is reversed. The judgment entered pursuant to the Fee Committee's award is stayed pending disposition of the malpractice claim.

*For reversal*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.