**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2507-16T1

ANDREW SCHILDINER,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

PATRICK P. TOSCANO, JR., ESQ.
and THE TOSCANO LAW FIRM
LLC,

      Defendants-Respondents/
      Cross-Appellants.

_____

Argued telephonically September 20, 2018 –
Decided October 10, 2018

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2065-14.

Kenneth S. Thyne argued the cause for appellant/cross-respondent (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, on the brief).

Patrick P. Toscano, Jr., argued the cause for respondents/cross-appellants (The Toscano Law Firm, LLC, attorneys; AnneMarie Harrison, on the brief).

PER CURIAM

Plaintiff Andrew Schildiner appeals from Law Division orders dismissing his amended complaint, which asserted claims of legal malpractice and breach of fiduciary duty, and setting the amount of reasonable fees payable to defendants, Patrick Toscano Jr., Esq. and the Toscano Law Firm, LLC. We affirm.

I

The New Jersey Supreme Court disbarred plaintiff on January 7, 2013 after plaintiff acknowledged knowingly misappropriating trust funds. The Office of Attorney Ethics informed the Bergen County Prosecutor's Office of plaintiff's disbarment and acknowledgement. Plaintiff then contacted Arthur Margeotes, a criminal defense attorney and an associate with defendant Toscano Law Firm, LLC.

After meeting with Margeotes and defendant Patrick Toscano Jr., Esq., plaintiff entered into a retainer agreement on March 1, 2013, whereby plaintiff retained defendants to represent his "legal interests in connection with:

1. State v. Andrew Schildiner[.][1]

_____

[1] The State had not initiated a criminal case against plaintiff at that time, and never did so.

2. Theft, Theft by Deception, Second Degree (subsequent to disbarment – presumption of incarceration, [seven] year presumptive term)[.]"

The agreement provided for a "$100,000.00 Non-refundable (flat and capped fee)." The fee schedule required an $80,000 payment upon signing the agreement and a $20,000 payment due April 1, 2013. Plaintiff contends defendants offered only the flat non-refundable fee arrangement. Defendants contend they offered plaintiff an hourly based fee, as well as the flat fee arrangement, and plaintiff chose the flat fee. Defendants further contend plaintiff fully understood the flat fee would apply, regardless of how much time defendants actually spent on the case. Plaintiff paid the initial $80,000, then paid the remaining $20,000 on approximately July 8, 2013.

Defendants contend they immediately began working on the case and contacted the prosecutor's office multiple times. On April 5, 2013, the prosecutor's office informed defendants, "we currently have no active investigation or prosecution pending with regard to [plaintiff]." Defendants confirmed there was no pending investigation or prosecution on July 8, 2013. The State ultimately declined to file any charges against plaintiff. Defendants contend they fully earned the $100,000 fee.

Defendants paid Margeotes $30,000 per an agreement between defendants and Margeotes. Defendants terminated Margeotes in July 2013 because his "overall work performance was, unfortunately, extremely substandard . . . ."

On September 19, 2013, plaintiff's current attorney wrote to defendants requesting an accounting of services performed for plaintiff and a refund of all unearned fees. On September 23, 2013, defendants sent plaintiff's attorney the firm's twenty-seven-page file regarding plaintiff and advised that if plaintiff wished to pursue a fee refund, he should file for fee arbitration.

On January 13, 2014, plaintiff filed a complaint demanding defendants provide "[a]n accounting of time spent . . . and fees claimed," and "[a] return of all fees not earned or exceeding a reasonable fee." The complaint also demanded "[c]ompensatory [d]amages," along with "[s]pecial and [c]onsequential [d]amages." Defendants responded by filing several counterclaims and third-party complaints against Margeotes and plaintiff's current attorneys. The third-party complaint included a request for disgorgement of Margeotes' share of any fees the court orders defendants to return. Defendants also requested a judgment declaring their entitlement to a reasonable fee and setting the amount thereof.

After several motions for dismissal and summary judgment, the trial court dismissed defendants' counterclaims and third-party complaint, found the

4

$100,000 flat fee unreasonable, and ordered defendants to produce an accounting and return any unearned fees. The judge found plaintiff terminated the agreement with defendants and reasoned "[t]he nonrefundable portion of the agreement should not be enforced, since it would hinder the ability to retain counsel in contravention of <u>Cohen</u>."[2] However, the judge also found "[d]efendant should be allowed to retain funds for the services performed."

In their initial accounting, defendants simply provided a statement that they earned the entire fee because the parties agreed to a flat fee. The trial court rejected the accounting, finding defendants in violation of its previous order, and again ordered defendants to produce an accounting and return any unearned fees.

Defendants then produced a detailed accounting listing the time spent and services provided on behalf of plaintiff. That accounting listed 110 hours of work performed at $505 per hour for a total fee of $55,550. The work included several hours of research and review of rules and case law. In addition, defendants claimed plaintiff was responsible for the $30,000 fee paid to Margeotes, despite the fact that defendants had no time records regarding Margeotes' work. Defendants agreed to return the remaining $14,450, "upon

---

[2] <u>Cohen v. Radio-Elecs. Officers Union</u>, 146 N.J. 140, 157 (1996) ("A retainer agreement may not prevent a client from discharging a lawyer.").

[receiving] written assurance that we have satisfied the Court's Order respecting the accounting."

The trial court again found defendants in violation of its order to provide an accounting; as a result, the court ordered defendants to deposit $44,450 with the court and pay plaintiff's attorney's fees incurred in bringing a motion to enforce litigant's rights.

Plaintiff then requested leave to amend his complaint to add claims of malpractice, which the court granted. After plaintiff filed the amended complaint, the trial court scheduled a hearing regarding the reasonableness of defendants' fees. At the hearing, defendant Patrick Toscano Jr. testified at length regarding his representation of plaintiff. The trial court then issued a detailed written opinion, reviewing each of defendants' itemized entries and determining the reasonableness of each one[3]; however, the trial judge failed to enter a confirming order regarding her written opinion before she retired.

Subsequently, a second judge took over the case and issued an order requiring defendants to deposit $24,644 with the court in addition to the $44,450 already deposited. A third judge then issued an order finalizing the first judge's

---

[3] The judge determined defendants were entitled to retain $30,906 of the $100,000 flat fee.

order requiring defendants to deposit $44,450 and again ordering defendants to deposit the additional $24,644. The third judge also granted summary judgment to defendants dismissing plaintiff's malpractice and breach of fiduciary duty claims. After several rounds of appeals, cross-appeals, dismissals, and reinstatements, we now address plaintiff's appeal from the orders dismissing his malpractice and breach of fiduciary duty claims, and allowing defendants to retain $30,906 of the $100,000 flat fee paid by plaintiff.

II

We first address plaintiff's argument that the trial court improperly granted summary judgment dismissing plaintiff's malpractice and breach of fiduciary duty claims. Plaintiff further argues the malpractice or breach of fiduciary duty entitled plaintiff to an award of attorney fees expended in bringing the current complaint to retrieve unearned fees. Defendants counter that this matter constitutes a fee dispute, which does not allow the award of attorney fees.

Whether defendants are liable for attorney fees turns on whether defendants committed legal malpractice or this is merely a fee dispute. If defendants committed malpractice, plaintiff is entitled to attorney fees. Saffer v. Willoughby, 143 N.J. 256, 272 (1996). In Saffer, the client first filed a request

7

for fee arbitration. Id. at 260. While the fee arbitration was pending, the client uncovered alleged malpractice. Ibid. The alleged malpractice had nothing to do with the fee agreement between the lawyer and client. Id. at 262. The Supreme Court held "[o]rdinarily, an attorney may not collect attorney fees for services negligently performed. In addition, a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action." Id. at 272.

In a malpractice case, the plaintiff must prove the existence of a relationship creating a duty of care, a breach of that duty, and proximate causation between the breach and any damages sustained. McGrogan v. Till, 167 N.J. 414, 425 (2001). The damages incurred are the amount the plaintiff would have received had the attorney fulfilled his or her duty of care. Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 601 (1995) (citation omitted).

Plaintiff first contends defendants' refusal to return unearned fees is a violation of the Rules of Professional Conduct (RPCs), and therefore a breach of duty constituting malpractice. RPC 1.16(d) states, "Upon termination of representation, a lawyer shall . . . refund[] any advance payment of fee that has not been earned or incurred." However, an RPC violation alone is not enough to establish legal malpractice. Baxt v. Liloia, 155 N.J. 190, 198-99 (1998).

Nevertheless, an attorney's obligations under the RPCs can be relevant and admissible in evaluating the legal duty of an attorney in a malpractice action. Id. at 199-200.

Here, plaintiff contends defendants did not earn the full $100,000 fee. Defendants contend the parties agreed to a fixed non-refundable $100,000 fee, and defendants performed the requested task of keeping plaintiff out of jail. Unlike Saffer, the issue here is purely about the fee agreement; this is a fee dispute, rather than a malpractice claim. Defendants did not violate RPC 1.16(d) because they did not refuse to return funds they knew were unearned; they disputed the fact that the fees were unearned. Because this is merely a fee dispute, defendants did not breach a fiduciary duty by refusing to return funds.

Plaintiff next argues defendants breached a fiduciary duty to plaintiff by failing to properly advise him as to the non-refundable aspect of the retainer agreement. "In entering a contract at the outset of a representation, the lawyer must explain the basis and rate of the fee . . . and advise the client of such matters as conflicts of interest, the scope of the representation, and the contract's implications for the client . . . ." Restatement (Third) of the Law Governing Lawyers § 18 cmt. d (Am. Law Inst. 2000). RPC 1.4(c) states, "A lawyer shall

explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The RPCs require an explanation "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 1.4(c). As a former attorney, plaintiff was clearly capable of understanding the non-refundable nature of the agreement and the implications of such an agreement. Therefore, defendants did not violate RPC 1.4(c). Furthermore, even if defendants did violate RPC 1.4(c), such a violation does not automatically constitute malpractice. See Baxt, 155 N.J. at 198-200. Accordingly, we conclude defendants did not breach any fiduciary duty to plaintiff by failing to explain the retainer agreement.

Because defendants did not breach any fiduciary duty to plaintiff, and the record contains no evidence of any negligent representation of plaintiff, defendants did not commit malpractice. Accordingly, we find the trial court properly dismissed plaintiff's malpractice and breach of fiduciary duty claims.

III

Finally, plaintiff contends defendants billed for unnecessary research, and plaintiff should not be liable for the cost of that research. Specifically, plaintiff contends eighty-eight of the one-hundred-ten hours submitted are unreasonable.

A-2507-16T1

The trial court found 48.8 hours unreasonable, and ordered defendants to return $69,094 of the $100,000 fee.

We review fee determinations for an abuse of discretion. Rendine v. Pantzer, 141 N.J. 292, 317 (1995). "[F]ee determinations by trial courts will be disturbed only on the rarest occasions . . . ." Ibid.

"[T]he trial courts have 'wide latitude in resolving attorney-fee applications . . . .'" Triffin v. Automatic Data Processing, Inc., 411 N.J. Super. 292, 308 (App. Div. 2010) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 25 (2004)). In order to determine a reasonable attorney fee, the court starts with the "lodestar," which equals the "number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine, 141 N.J. at 334-35. "[A] trial court may exclude hours from the lodestar calculation if in its view the hours expended exceed 'those that competent counsel reasonably would have expended to achieve a comparable result,' in the context of 'the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives.'" Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 355 (1995) (quoting Rendine, 141 N.J. at 336). The trial court should exclude hours that are "excessive, redundant, or otherwise unnecessary." Rendine, 141 N.J. at 335 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).

The first step in the lodestar calculation considers the number of hours "reasonably" devoted to the matter. Rendine, 141 N.J. at 334-35. However, a trial court "should not accept passively the submissions of counsel to support the lodestar amount . . . ." Id. at 335. Thus, "[i]t does not follow that the amount of time actually expended is the amount of time reasonably expended." Ibid. (emphases in original) (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). The "determination need not be unnecessarily complex or protracted, but the trial court should satisfy itself that the assigned hourly rates are fair, realistic, and accurate, or should make appropriate adjustments." Id. at 337.

Here, the trial court held a hearing on the reasonableness of the fees, in which defendant Patrick Toscano Jr. testified at length. In her decision, the judge went through each line of defendants' accounting showing the work performed and hours spent, and determined the reasonableness of each entry, considering defendants' expertise and experience. The judge found defendants' hourly rate reasonable due to their extensive expertise, but not their lodestar calculation. For example, the judge found defendants' claim of five-and-one-half hours to review three cases totaling less than twenty pages excessive for attorneys with defendants' vast experience in criminal law. Because the judge

carefully examined each line of defendants' accounting for reasonableness, we affirm her findings as to the amount of fees earned.

Our standard of review requires deference to a judge's findings "unless they are so wholly unsupportable as to result in a denial of justice." Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div.), aff'd o.b., 33 N.J. 78, (1960); see also Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). We conclude the record contains sufficient credible evidence in the record to support the judge's findings, and that she correctly applied the law. Accordingly, we affirm the trial court's order requiring defendants to return $69,094 of the $100,000 fee.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2507-16T1