SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## Peter Innes v. Madeline Marzano-Lesnevich, Esq. (A-16-14) (074291)

**Argued October 27, 2015 -- Decided April 26, 2016**

**SOLOMON, J., writing for a majority of the Court.**

The issue in this appeal is whether, in prosecuting a fiduciary malfeasance action against an attorney who intentionally violates an escrow agreement, the prevailing beneficiary may recover attorneys' fees.

Plaintiff Peter Innes and his wife, Maria Jose Carrascosa, were involved in a contentious divorce and custody battle over their daughter Victoria. Innes is a citizen of the United States and a resident of New Jersey. Carrascosa is a Spanish national and a permanent resident of New Jersey. They were married in Spain in 1999, and Victoria, their only child, was born in New Jersey in 2000. Victoria is a dual citizen of the United States and Spain. During the course of their domestic relations litigation, the parties entered into an agreement whereby Carrascosa's attorneys would hold Victoria's United States and Spanish passports in trust to restrict travel outside of the United States with Victoria without written permission of the other party (the Agreement).

Carrascosa's attorney at the time the Agreement was entered into was Mitchell A. Liebowitz, Esq. Innes was represented by third-party defendant Peter Van Aulen. Carrascosa discharged Liebowitz and retained defendants Madeline Marzano-Lesnevich, Esq., and Lesnevich & Marzano Lesnevich, Attorneys at Law. Defendant Marzano-Lesnevich received Carrascosa's file from Liebowitz, including the Agreement and Victoria's United States passport. In December 2004, Carrascosa obtained Victoria's United States passport from defendants, and used the passport to remove Victoria from the United States to Spain on January 13, 2005.

Innes filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction for Victoria's return to the United States and traveled to Spain for a hearing on the petition. The Spanish court denied the petition and ordered Victoria to remain in Spain until age eighteen. Meanwhile, the parties' domestic relations litigation continued in New Jersey. The Family Part judge entered a judgment of divorce and granted Innes sole legal and residential custody of Victoria. The judgment gave Carrascosa ten days to bring Victoria back to the United States, but Carrascosa failed to comply with the order.

In October 2007, Innes filed a complaint in the Law Division against defendants, Van Aulen, and Liebowitz. Innes alleged, in part, that they improperly released Victoria's United States passport to Carrascosa and intentionally interfered with the Agreement. Innes requested relief, including damages and attorneys' fees. Before trial, the court granted Van Aulen and Liebowitz's motions for summary judgment and sua sponte severed the third-party complaint against Carrascosa. However, the trial court denied defendants' motion for summary judgment, concluding that defendants owed a duty to Innes, and also denied defendants' motion to exclude any claim for counsel fees.

At the conclusion of trial, the only issue submitted to the jury was whether defendants were negligent in releasing Victoria's United States passport to Carrascosa. The jury determined that defendants were negligent and awarded damages to Innes and Victoria. The trial court denied defendants' motion for a new trial and their motion for judgment notwithstanding the verdict, but granted Innes' motion to amend the judgment for counsel fees and costs. The judge explained that an award of attorneys' fees was appropriate because "the jury decided . . . that the defendants deviated from the standard of care and thereby breached a duty owed to Peter and Victoria Innes when they gave Ms. Carrascosa Victoria's passport[]. As such, the traditional rule that warrants an award of fees in legal malpractice cases extends to the matter at bar."

Following defendants' appeal, the Appellate Division concluded that awarding Innes attorneys' fees was appropriate even though no attorney-client relationship existed between Innes and defendants. In doing so, the panel concluded that defendants intentionally violated the Agreement. The Supreme Court granted defendants' petition for certification, limited to the issue of "whether the attorney-defendants can be liable for attorneys' fees as consequential damages to a non-client under Saffer v. Willoughby, 143 N.J. 256 (1996)." 220 N.J. 37 (2014).

**HELD:**  Defendant attorneys can be held liable for counsel fees if, as trustees and escrow agents for both Innes and Carrascosa, they intentionally breached their fiduciary obligation to Innes by releasing Victoria's United States passport to Carrascosa without Innes' permission.

1.  In the field of civil litigation, New Jersey courts historically follow the "American Rule," which provides that litigants must bear the cost of their own attorneys' fees.  With the exception of eight enumerated circumstances, New Jersey's court rules evince a strong public policy against shifting counsel fees.  R. 4:42-9.  In addition, this Court has "created carefully limited and closely interrelated exceptions to the American Rule" that are not provided for by statute, court rule, or contract.  In re Estate of Vayda, 184 N.J. 115, 121 (2005).  (pp. 11-12)

2.  In Saffer, the Court concluded that it is appropriate to award attorneys' fees to a prevailing plaintiff in a malpractice action because such fees are "consequential damages that are proximately related to the malpractice."  Saffer, supra, at 272.  In Packard-Bamberger & Co. v. Collier, this Court extended Saffer to claims against attorneys for intentional misconduct, and held "that a successful claimant in an attorney-misconduct case may recover reasonable counsel fees incurred in prosecuting that action."  167 N.J. 427, 443 (2001).  Notably, the Court found that fee-shifting is appropriate in misconduct cases involving an attorney-client relationship, even though the misconduct did not constitute legal malpractice.  (pp. 12-15)

3.  Other fee-shifting cases decided by this Court discuss the underpinnings of Saffer and Packard-Bamberger and conclude that counsel fees are appropriate in cases of breach of a fiduciary duty.  For example, In re Estate of Lash recognized an exception to the American Rule in a case involving an estate administrator malfeasance claim covered by the terms of a surety bond.  169 N.J. 20, 35 (2001).  The Court explained, however, that Lash was distinguishable from, and thus not an extension of, Saffer and Packard-Bamberger because the holdings in Saffer and Packard-Bamberger depended upon the attorney-client relationship.  Following Lash, this Court decided In re Niles Trust, 176 N.J. 282 (2003) and awarded counsel fees to a prevailing party where defendant, an estate executor and trustee, was not an attorney.  Thus, Niles Trust extended the American Rule to trustee undue influence cases "based on the fiduciary's intentional misconduct regardless of his or her professional status."  Id. at 299-300.  (pp. 15-19)

4.  Departures from the "American Rule" are the exception and the Court has never held that a non-client is entitled to a fee-shifting award for an attorney's negligence.  Packard-Bamberger, Lash, and Niles Trust involved fiduciaries who, by their intentional misconduct, violated their fiduciary duties and inflicted damage upon the beneficiaries.  Consistent with that case law, a prevailing beneficiary may be awarded counsel fees incurred to recover damages arising from an attorney's intentional violation of a fiduciary duty.  Here, defendants were holding Victoria's United States passport as trustees and escrow agents and were thus fiduciaries for the benefit of both Carrascosa and Innes.  Defendants, however, breached their fiduciary obligation to Innes and released Victoria's United States passport to Carrascosa without Innes' written permission.  Accordingly, consistent with post-Saffer jurisprudence, Innes would be entitled to counsel fees if there had been a finding that defendants, as attorneys, intentionally breached their fiduciary responsibility to Innes, regardless of the existence of an attorney-client relationship.  The jury, however, did not make a specific finding that defendants intentionally breached the Agreement.  As the Appellate Division concluded, there is substantial support in the record from which to conclude that defendants' misconduct was intentional.  Nevertheless, the Court must remand the case to the trial court for it to decide whether defendants intentionally violated their fiduciary duty to Innes when they breached the Agreement.  (pp. 19-22)

   The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**, and the matter is **REMANDED** to the trial court for further proceedings consistent with the Court's opinion.

   **JUSTICE LaVECCHIA**, **DISSENTING**, joined by **JUDGE CUFF (temporarily assigned)**, expresses the view that what started as a limited, common law exception to the American Rule has been altered through a series of cases, which now culminates with today's majority decision, dealing the American Rule yet another blow by expanding awards of attorneys' fees to non-clients of attorneys in escrow settings.

   **CHIEF JUSTICE RABNER and JUSTICE ALBIN join in JUSTICE SOLOMON's opinion. JUSTICE LaVECCHIA filed a separate, dissenting opinion, in which JUDGE CUFF (temporarily assigned) joins.  JUSTICES PATTERSON and FERNANDEZ-VINA did not participate.**

PETER INNES and VICTORIA
SOLENNE INNES, by her
Guardian PETER INNES,

    Plaintiffs-Respondents,

        v.

MADELINE MARZANO-LESNEVICH,
ESQ., and LESNEVICH &
MARZANO-LESNEVICH, Attorneys
At Law, i/j/s/a,

    Defendants/Third-Party
    Plaintiffs-Appellants,

        v.

MITCHELL A. LIEBOWITZ, ESQ.,
PETER VAN AULEN, ESQ., and
MARIA JOSE CARRASCOSA,

    Third-Party Defendants.


        Argued October 27, 2015 – Decided April 26, 2016

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 435 N.J. Super. 198 (App. Div.
        2014).

        Christopher J. Carey argued the cause for
        appellants (Graham Curtin, attorneys; Mr.
        Carey and Jared J. Limbach, on the briefs).

        James H. Waller argued the cause for
        respondents Peter Innes and Victoria Solenne
        Innes.

Fruqan Mouzon argued the cause for amicus curiae New Jersey State Bar Association (Miles S. Winder III, President, attorney; Paris P. Eliades, of counsel; Mr. Eliades, Mr. Mouzon, Dennis J. Drasco, and Arthur M. Owens, on the brief).

Steven J. Tegrar submitted a brief on behalf of respondent Peter Van Aulen, Esq. (Law Office of Joseph Carolan, attorney; Mr. Tegrar and George H. Sly, Jr., on the brief).

William F. O'Connor, Jr., submitted a brief on behalf of respondent Mitchell A. Liebowitz, Esq. (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Mr. O'Connor and Lawrence S. Cutalo on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

Plaintiff Peter Innes and his wife, Maria Jose Carrascosa, were involved in a contentious divorce and custody battle over their daughter Victoria. During the course of their domestic relations litigation, the parties entered into an agreement whereby Carrascosa's attorneys would hold Victoria's United States and Spanish passports in trust to restrict travel outside of the United States with Victoria without written permission of the other party (the Agreement).[1] Nevertheless, Carrascosa's attorneys released Victoria's United States passport to Carrascosa, who used it to remove Victoria to Carrascosa's

---

[1] Carrascosa's attorney at the time the Agreement was entered into was Mitchell A. Liebowitz, Esq. He was discharged by Carrascosa, and defendants Madeline Marzano-Lesnevich, Esq., and Lesnevich & Marzano Lesnevich, Attorneys at Law, thereafter undertook the representation of Carrascosa.

2

native Spain, where Victoria has remained for the past ten years. By order of a Spanish court, Innes has been prevented from contacting his daughter.

Innes filed a complaint against Carrascosa's attorneys and, following a jury trial, recovered damages for their negligence in releasing Victoria's United States passport to Carrascosa. Innes then filed a post-trial motion to amend the judgment to award counsel fees. The trial court granted the motion, and the Appellate Division affirmed the award.

We are called upon to consider whether, in prosecuting a fiduciary malfeasance action against an attorney who intentionally violates an escrow agreement, the prevailing beneficiary may recover attorneys' fees. We refine our tightly circumscribed exception to New Jersey's general rule against awarding counsel fees to prevailing parties and hold that, because defendants were attorneys acting in a fiduciary capacity as trustees and escrow agents for both Innes and Carrascosa, if they intentionally breached their fiduciary obligation to Innes by releasing Victoria's United States passport to Carrascosa without Innes' permission, defendants can be held liable for counsel fees. However, since the jury did not make a specific finding that defendants' misconduct was intentional, we remand to the trial court, pursuant to R. 4:39-1, for a finding as to whether defendants' breach of the Agreement was intentional.

3

I.

A.

Understanding the parties' dispute over attorneys' fees requires a review of the pertinent facts in the domestic relations litigation between Innes and Carrascosa.

Innes is a citizen of the United States and a resident of New Jersey. Carrascosa is a Spanish national and a permanent resident of New Jersey. They were married in Spain in 1999, and their only child, Victoria, was born in New Jersey in 2000. Victoria is a dual citizen of the United States and Spain.

According to Innes, the couple experienced escalating marital discord, and he ultimately moved out of the family home in May 2004. During their marital difficulties, Innes was represented by third-party defendant Peter Van Aulen, and Carrascosa by third-party defendant Mitchell A. Liebowitz.

In October 2004, Liebowitz drafted the Agreement whereby the signatories, the couple and their attorneys, agreed that Liebowitz would hold Victoria's United States and Spanish passports in trust so as to restrict either parent from traveling with Victoria outside of the United States without the written permission of the other. Specifically, the Agreement provided, in part,

> [n]either . . . Carrascosa nor . . . Innes may
> travel outside the United States with Victoria

4

> . . . without the written permission of the other party. To that end, Victoria['s] . . . <u>United States and Spanish passport [sic] shall be held in trust</u> by Mitchell A. Liebowitz, Esq. Victoria['s] . . . Spanish passport has been lost and not replaced, and its loss was reported to the Spanish Consulate in New York . . . . Carrascosa will file an application for a replacement Spanish passport within [twenty] days of today.[2]
>
> [(Emphasis added).]

On November 19, 2004, Carrascosa informed Liebowitz that she was terminating their attorney-client relationship and that she retained defendant Madeline Marzano-Lesnevich (Marzano-Lesnevich) of the law firm of Lesnevich & Marzano-Lesnevich, Attorneys at Law (LML). That same day, Sarah Jacobs (then Sarah Tremml), an associate at LML, sent a letter to Liebowitz informing him of LML's representation of Carrascosa and requesting release of Carrascosa's file. Liebowitz responded, "[a]s you may know, I am holding her daughter's United States passport. I would prefer if you arranged for the original file to be picked up by messenger with the messenger acknowledging

---

[2] At the time the Agreement was signed, Carrascosa advised the parties that Victoria's Spanish passport had been lost. After retaining defendants, Carrascosa advised Jacobs that the Spanish passport had been stolen. When Carrascosa was deposed, however, she testified that she always had Victoria's Spanish passport and that it was never lost or stolen. Nevertheless, Thomas Kilbride, Department of Homeland Security Immigration and Customs Enforcement (ICE), testified that the ICE database shows Victoria left the country from Newark Liberty International Airport using her United States passport.

receipt of the passport." Defendant Marzano-Lesnevich received Carrascosa's file from Liebowitz on or about December 8, 2004; it included the Agreement and Victoria's United States passport.

In December 2004, Carrascosa obtained Victoria's United States passport from LML, and used the passport to remove Victoria from the United States to Spain on January 13, 2005. During proceedings before the Family Part in February 2005, Innes and his then counsel discovered that Victoria left the country with her maternal grandfather.

Innes filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction for Victoria's return to the United States and traveled to Spain for a hearing on the petition. The Spanish court denied the petition and ordered Victoria to remain in Spain until age eighteen. Subsequently, Carrascosa filed numerous criminal complaints against Innes in Spain, and Innes has been prevented from contacting his daughter by order of a Spanish court.

Meanwhile, the parties' domestic relations litigation continued in New Jersey. It included a domestic violence complaint by Carrascosa which was later dismissed, and a challenge to the court's jurisdiction. After determining that New Jersey had jurisdiction, the Family Part judge entered a judgment of divorce and granted Innes sole legal and residential custody of Victoria. The judgment gave Carrascosa ten days to

bring Victoria back to the United States, but Carrascosa failed to comply with the order.[3]  Innes testified that he last saw Victoria in the fall of 2005 when he was in Spain for legal proceedings, and that, because of the notoriety of the case in the Spanish media as well as the criminal complaints filed against him by Carrascosa, he feared incarceration if he returned to Spain to visit his daughter.  Innes maintains that Carrascosa's family, with whom Victoria resides in Spain, has rejected his efforts to contact his daughter for the past ten years, and that they have refused to accept phone calls or Christmas and birthday presents he sends to Victoria.

B.

In October 2007, Innes filed a complaint in the Law Division against defendants alleging, in part, that they improperly released Victoria's United States passport to Carrascosa and intentionally interfered with the Agreement. Innes requested relief, including damages and attorneys' fees.

---

[3] Carrascosa was arrested in November 2006 and was indicted by a Bergen County Grand Jury on eight counts of interference with custody and one count of contempt of court.  She was sentenced to a fourteen-year term of incarceration in state prison on December 23, 2009.  Carrascosa was paroled from the state prison in 2014, but was transferred to the Bergen County Jail on contempt of court charges for violating the order to bring Victoria back to the United States.  Carrascosa was released from Bergen County Jail on April 24, 2015.

Before trial, the court granted Van Aulen and Liebowitz's motions for summary judgment and <u>sua sponte</u> severed the third-party complaint against Carrascosa.  However, the trial court denied defendants' motion for summary judgment, concluding that defendants owed a duty to Innes.[4]  The court also denied defendants' motion to exclude any claim for counsel fees.

At the conclusion of trial, the only issue submitted to the jury was whether defendants were negligent in releasing Victoria's United States passport to Carrascosa.  <u>Innes v. Marzano-Lesnevich</u>, 435 <u>N.J. Super.</u> 198, 214 n.7 (App. Div. 2014) (noting that, although Innes' complaint alleged several causes of action, "ultimately the case was submitted to the jury only as to the claim that defendants breached their professional duty").  Specifically, the jury was asked to answer the following question: "Did Madeline Marzano-Lesnevich and/or the Marzano-Lesnevich law firm deviate from the standard of care

---

[4] Defendants contended at trial and on appeal that they were not bound by the Agreement entered into by their predecessor.  This contention, which is without legal or factual support, was disregarded by the Appellate Division.  We note only that defendants acknowledged reading the Agreement prior to releasing Victoria's passport to Carrascosa.  Therefore, defendants knew about the Agreement and the obligations it imposed upon them.  <u>See</u> <u>RPC</u> 1.15(a) (duty to appropriately safeguard property of clients or third persons that is in a lawyer's possession); <u>see also</u> <u>RPC</u> 1.15(b) (duty to promptly notify the client or third person after receiving property in which a client or third person has an interest).

8

applicable to lawyers regarding its treatment of the United States Passport of Victoria Innes?"[5]

The jury determined that defendants were negligent in releasing Victoria's passport to Carrascosa and awarded damages to Innes and Victoria. The trial court denied defendants' motion for a new trial and their motion for judgment notwithstanding the verdict but granted Innes' motion to amend the judgment for counsel fees and costs for both Innes and Victoria. Attached to the amended order for judgment was the judge's explanation that an award of attorneys' fees was appropriate because "the jury decided . . . that the defendants deviated from the standard of care and thereby breached a duty owed to Peter and Victoria Innes when they gave Ms. Carrascosa Victoria's passport[]. As such, the traditional rule that warrants an award of fees in legal malpractice cases extends to the matter at bar."

Following defendants' appeal, the Appellate Division concluded that awarding Innes attorneys' fees was appropriate even though no attorney-client relationship existed between Innes and defendants.[6] Id. at 244. In doing so, the panel concluded defendants intentionally violated the Agreement.

---

[5] The jury was also given questions regarding proximate cause and monetary compensation.
[6] Although the Appellate Division affirmed all aspects of the judgment with respect to Innes, the panel reversed all parts of

9

> The attorney fee award is particularly appropriate in this case, since defendants were holding Victoria's passport in trust and knew Innes and his attorney were relying upon the Agreement. Nevertheless, they intentionally violated the Agreement and gave the passport to Carrascosa upon her request.
>
> [Ibid.]

We granted defendants' petition for certification, limited to the issue of "whether the attorney-defendants can be liable for attorneys' fees as consequential damages to a non-client under Saffer v. Willoughby, 143 N.J. 256 (1996)." Innes v. Marzano-Lesnevich, 220 N.J. 37 (2014).

II.

Defendants, relying on Saffer, supra, and Packard-Bamberger & Co. v. Collier, 167 N.J. 427 (2001), argue fee-shifting in attorney malpractice and misconduct cases is appropriate only when it arises out of an attorney-client relationship, which is not present here.

Amicus New Jersey State Bar Association (NJSBA) also contends the trial court and the Appellate Division inappropriately extended Saffer, supra, and Packard-Bamberger,

---

the judgment pertaining to Victoria, including the award of counsel fees. Innes, supra, 435 N.J. Super. at 248. The panel reversed the award of damages for Victoria because there was insufficient evidence of the purported emotional damages and reversed her award of counsel fees because she was no longer a prevailing party. Id. at 241, 244.

10

*supra*, to a non-client's negligence claims against attorneys. According to the NJSBA, the notion that attorneys' fees are consequential damages would eviscerate the general rule against providing counsel fees to prevailing parties because attorneys' fees could always be considered consequential damages.

Innes urges this Court to affirm the Appellate Division's award of counsel fees and allow him to recover the expenses he incurred due to defendants' misconduct. Innes argues that *Saffer*, *supra*, should be extended to situations where an attorney breaches his or her fiduciary duty to a non-client.

III.

A.

In the field of civil litigation, New Jersey courts historically follow the "American Rule," which provides that litigants must bear the cost of their own attorneys' fees. *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 404 (2009). This Court has noted that "[t]he purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." *In re Niles Trust*, 176 N.J. 282, 294 (2003).

11

Indeed, our court rules evince New Jersey's strong public policy against shifting counsel fees, id. at 293, and provide, "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except" in eight enumerated circumstances. R. 4:42-9(a) (permitting award of attorney's fees in family action; out of court fund; probate action; mortgage foreclosure action; tax certificate foreclosure action; action upon liability or indemnity policy of insurance; as expressly provided by rules in any action; and all cases where attorneys' fees are permitted by statute).

This Court has "created carefully limited and closely interrelated exceptions to the American Rule that are not otherwise reflected in the text of Rule 4:42-9" and that are not provided for by statute, court rule, or contract. In re Estate of Vayda, 184 N.J. 115, 121 (2005). Saffer, supra, and Packard-Bamberger, supra, are part of this line of cases.

Saffer involved a fee dispute between an attorney and his former client, who filed a legal malpractice action against the former attorney. 143 N.J. at 260. One of the issues in Saffer was the effect a finding of malpractice should have on the fee dispute and on the former client's damages. This Court held that "[o]rdinarily, an attorney may not collect attorney fees for services negligently performed," and that "a negligent attorney is responsible for the reasonable legal expenses and

12

attorney fees incurred by a former client in prosecuting the legal malpractice action." Id. at 272. The Court reasoned that a client "'may recover for losses which are proximately caused by the attorney's negligence or malpractice,'" and that "[t]he purpose of a legal malpractice claim is 'to put a plaintiff in as good a position as he [or she] would have been had the [attorney] kept his [or her] contract.'" Id. at 271 (quoting Lieberman v. Emp'rs Ins. of Wausau, 84 N.J. 325, 341 (1980)). Accordingly, the Court concluded that it is appropriate to award attorneys' fees to a prevailing plaintiff in an attorney malpractice action because such fees are "consequential damages that are proximately related to the malpractice." Id. at 272.

In Packard-Bamberger, this Court extended Saffer to claims against attorneys for intentional misconduct. 167 N.J. at 443. Packard-Bamberger involved a corporation's attorney who intentionally withheld information and usurped a corporate opportunity. Id. at 437-38. The Law Division found that the attorney's actions did not constitute legal malpractice, but it awarded attorneys' fees to plaintiffs because it concluded that "authorization exists when an attorney commits intentional misconduct." Id. at 439. The Appellate Division disagreed, concluding that an award of attorneys' fees was not authorized under Saffer because the malpractice claim was dismissed. Id. at 442.

13

In reversing the Appellate Division, this Court held "that a successful claimant in an attorney-misconduct case may recover reasonable counsel fees incurred in prosecuting that action." Id. at 443.

> Stated plainly, an attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care. A client's claim concerning the defendant-attorney's breach of a fiduciary duty may arise in the legal malpractice context. Nonetheless, if it does not and is instead prosecuted as an independent tort, a claimant is entitled to recover attorneys' fees so long as the claimant proves that the attorney's breach arose from the attorney-client relationship.
>
> [Ibid. (emphasis added).]

Notably, the Court found that fee-shifting is appropriate in misconduct cases involving an attorney-client relationship, even though the misconduct did not constitute legal malpractice.

> We emphasize that a plaintiff must demonstrate the existence of an attorney-client relationship as a prerequisite to recovery. Such a requirement is consistent with the goal in Saffer of holding attorneys responsible for professional conduct that causes injury to their clients. It is likewise consistent with the policy, also suggested in Saffer, that a client should be able to recover for losses proximately caused by the attorney's improper performance of legal services. That policy is intended to assure that the client be placed in as good a position as if the attorney had performed properly.
>
> [Ibid. (emphasis added).]

14

The Court also noted that the defendant, in his dual roles as corporate director and corporate attorney, owed fiduciary duties to the plaintiff and concluded that "[b]ecause [defendant] violated the duty he owed to [the plaintiff] as legal counsel, the trial court's award of attorneys' fees was proper." Ibid.

B.

Other fee-shifting cases decided by this Court discuss the underpinnings of Saffer and Packard-Bamberger and conclude that counsel fees are appropriate in cases of breach of a fiduciary duty. For example, In re Estate of Lash recognized an exception to the American Rule in a case involving an estate administrator malfeasance claim covered by the terms of a surety bond. 169 N.J. 20, 35 (2001). In that case, the administrator of an estate breached his fiduciary duty by misappropriating estate funds. Id. at 24. When the estate could not recover from the administrator, the estate filed a complaint against Fireman's Fund Insurance Company (Fireman's Fund), which issued a surety bond on the estate. Id. at 25. The question in Lash was whether the estate could recoup from the surety on the bond, Fireman's Fund, counsel fees incurred in proceedings to recover the misappropriated monies. Id. at 23.

A majority of this Court held that the attorneys' fees incurred by the estate in its action on the surety bond should

15

be assessed against Fireman's Fund.  Id. at 35.  The Court

reasoned that "under principles of suretyship, [Fireman's Fund]

is liable for the full extent of the damages caused by [the

administrator] . . . including the attorneys' fees incurred in

the proceeding on the bond."  Id. at 28-29.  We also noted that

this conclusion did not conflict with the American Rule or Rule

4:42-9 because neither prohibits an award of counsel fees

incurred in litigation with a third party (Fireman's Fund), when

that litigation flows from the commission of a tort.  Id. at 31-

32; see also Pressler & Verniero, Current N.J. Court Rules,

comment 2.9 on R. 4:42-9 (2015) (explaining attorney's fees

permitted when incurred in prosecution or defense of action

caused by third party's tortious conduct).

 We explained that Lash was distinguishable from, and thus

not an extension of, Saffer and Packard-Bamberger because the

holdings in Saffer and Packard-Bamberger depended upon the

attorney-client relationship.

> Those cases authorize an award of attorneys'
> fees against an attorney-defendant when those
> fees were incurred as a result of the
> litigation to establish the attorney-
> defendant's liability.  Such an award is
> directly contrary to the American Rule's
> prohibition, but was authorized in those cases
> due to the significance of the attorney-client
> relationship.
>
> [Lash, supra, 169 N.J. at 33 (emphasis
> added).]

16

The Court explained that, under Saffer, the plaintiffs in Lash would not have been entitled to an award of attorneys' fees against the administrator for breach of his fiduciary duty because the breach did not occur in the context of an attorney-client relationship.

> [T]he estate may not have been entitled to an award of fees based simply on the fact that [the administrator] owed the estate a fiduciary duty. Packard-Bamberger makes clear that the fact that a person owes another a fiduciary duty, in and of itself, does not justify an award of fees unless the wrongful conduct arose out of an attorney-client relationship.
>
> [Id. at 33-34 (emphasis added).]

Following Lash, a majority of this Court decided Niles Trust and awarded counsel fees to a prevailing party where defendant, an estate executor and trustee, was not an attorney. 176 N.J. at 300. The Court held that "when an executor or trustee commits the pernicious tort of undue influence, an exception to the American Rule is created that permits the estate to be made whole by an assessment of all reasonable counsel fees against the fiduciary that were incurred by the estate." Id. at 298-99. We noted that "[a] fiduciary relationship exists between a trustee and the trust similar to the attorney-client relationship," and that "[b]oth the attorney and a trustee act as officers of the court when acting on behalf of clients and beneficiaries." Id. at 297. The Court concluded

17

that the defendant's "non-attorney" status should not prevent an award of attorneys' fees in suits against trustees for undue influence.

> Undue influence committed by an executor or trustee to obtain a significant financial benefit for himself is especially pernicious regardless of whether the fiduciary is an attorney. Undue influence by an attorney who becomes executor-beneficiary under a will, and undue influence by a non-attorney who becomes trustee-beneficiary, should be treated the same regarding the payment of counsel fees required to remove the person as a fiduciary. See generally Haynes, supra, 87 N.J. at 177-83. The only difference between the two is that the lawyer used his authorization to practice law as a license to steal and the trustee, having been named to that office, used the office to do the same. It is a difference with little meaning. In both instances, the removal proceedings are based on fraud or other intentional wrongdoing perpetrated against the settlor or testator and the beneficiaries.
>
> [Id. at 299.]

Thus, Niles Trust extended the American Rule to trustee undue influence cases "based on the fiduciary's intentional misconduct regardless of his or her professional status." Id. at 299-300. The majority noted that "[t]he exception we have created directly follows from the special status of the undue influence tort." Id. at 300.

This Court declined to extend Niles Trust to a case in which a "non-attorney" executor of an estate acted negligently

18

and in bad faith in his administration of the estate, but was not found to have committed undue influence. Vayda, supra, 184 N.J. at 124. In declining to assess attorneys' fees against the negligent executor, the Court reasoned that Rule 4:42-9(a)(3) provided the appropriate remedy by specifically allowing attorneys' fees in probate actions to be paid from the estate. Ibid. The Court also took the occasion to reaffirm its commitment to "New Jersey's 'strong public policy against the shifting of attorney's fees.'" Ibid. (quoting Niles Trust, supra, 176 N.J. at 293).

IV.

Departures from the "American Rule" are the exception. We have awarded counsel fees to a prevailing plaintiff in a legal malpractice action premised upon professional negligence because of the unique nature of the attorney-client relationship. See Saffer, supra, 143 N.J. at 272. We have never held that a non-client is entitled to a fee-shifting award for an attorney's negligence. Packard-Bamberger, Lash, and Niles Trust involved fiduciaries who, by their intentional misconduct, violated their fiduciary duties and inflicted damage upon the beneficiaries.

Consistent with our case law, we reaffirm that a prevailing beneficiary may be awarded counsel fees incurred to recover damages arising from an attorney's intentional violation of a

19

fiduciary duty. As this Court has observed, a "fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care." McKelvey v. Pierce, 173 N.J. 26, 57 (2002) (accord Restatement (Second) of Trusts §§ 170, 174 (1959)). Accordingly, "'[o]ne standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.'" Niles Trust, supra, 176 N.J. at 295 (quoting Restatement (Second) of Torts § 874).

Here, defendants were holding Victoria's United States passport as trustees and escrow agents. As such, they were fiduciaries for the benefit of both Carrascosa and Innes. Colegrove v. Behrle, 63 N.J. Super. 356, 366 (App. Div. 1960) ("A fiduciary relationship is created by and inherent in the nature of an escrow agreement."); see also id. at 365 ("An escrow agreement imports a legal obligation on the part of the depository to retain the . . . documents until the performance of a condition or the happening of an event, at which time the . . . documents are to be delivered in accordance with the terms of the agreement."). Innes relied on defendants to carry out their fiduciary responsibilities under the Agreement and prevent Carrascosa from taking Victoria away from him. Defendants, however, breached their fiduciary obligation to Innes and released Victoria's United States passport to Carrascosa without

20

Innes' written permission.  Accordingly, consistent with our post-Saffer jurisprudence, Innes would be entitled to counsel fees if there had been a finding that defendants, as attorneys, intentionally breached their fiduciary responsibility to Innes, regardless of the existence of an attorney-client relationship.

The dissent reiterates concerns expressed in prior dissents from Lash and Niles Trust, and rails against the conclusion we reach today as further erosion of our adherence to the American Rule.  Yet, the dissent fails to persuasively dispute that the majority is restating and refining binding precedent -- that a prevailing beneficiary may be awarded counsel fees incurred to recover damages arising from an attorney's intentional violation of a fiduciary obligation, see Packard-Bamberger, Lash, and Niles Trust -- not expanding our prior rule.

We note, however, that the jury did not make a specific finding that defendants intentionally breached the Agreement. Innes, in his complaint, specifically pleaded that defendants intentionally interfered with the Agreement, but the trial court did not submit an interrogatory to the jury on that issue, and neither party demanded its submission.  As a result, the jury's verdict did not resolve the issue.  Under these circumstances, the right to have the jury decide the issue was waived.  See Campione v. Soden, 150 N.J. 163, 186 (1997) (accord R. 4:39-1) ("If . . . the court omits any issue of fact raised by the

21

pleadings . . . , each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury.")

As the Appellate Division concluded, there is substantial support in the record from which to conclude that defendants' misconduct was intentional.  Nevertheless, we must remand the case to the trial court for it to decide whether defendants intentionally violated their fiduciary duty to Innes when they breached the Agreement.  See Stella v. Dean Witter Reynolds, Inc., 241 N.J. Super. 55, 72 (App. Div.) ("Since . . . there is sufficient evidence in the record to justify, but not to require, a finding of [fact in dispute], we will remand the case to the trial judge for a finding on this issue."), certif. denied, 122 N.J. 418 (1990).

V.

The judgment of the Appellate Division is affirmed as modified, and this matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICE ALBIN join in JUSTICE SOLOMON's opinion.  JUSTICE LaVECCHIA filed a separate, dissenting opinion, in which JUDGE CUFF (temporarily assigned) joins.  JUSTICES PATTERSON and FERNANDEZ-VINA did not participate.

PETER INNES and VICTORIA
SOLENNE INNES, by her
Guardian PETER INNES,

    Plaintiffs-Respondents,

        v.

MADELINE MARZANO-LESNEVICH,
ESQ., and LESNEVICH &
MARZANO-LESNEVICH, Attorneys
At Law, i/j/s/a,

    Defendants/Third-Party
    Plaintiffs-Appellants,

        v.

MITCHELL A. LIEBOWITZ, ESQ.,
PETER VAN AULEN, ESQ., and
MARIA JOSE CARRASCOSA,

    Third-Party Defendants.

    JUSTICE LaVECCHIA, dissenting.

    Paying lip service to the American Rule, the Court today again refines what it terms "our tightly circumscribed exception to New Jersey's general rule against awarding counsel fees to prevailing parties" and orders the awarding of fees against attorneys who breached escrow responsibilities owed to the client of an adversary. Ante at __ (slip op. at 3).

    In Saffer v. Willoughby, 143 N.J. 256 (1996), this Court held that a successful legal malpractice plaintiff could recover

1

attorneys' fees, but only against the former lawyer with whom the attorney-client relationship existed. What started as a limited, common law exception to the American Rule has been altered through a series of cases, which now culminates with today's decision. In its present adjustment to our case law governing fee shifting, the majority deals the American Rule yet another blow by expanding awards of attorneys' fees to non-clients of attorneys in escrow settings.

In my view, the Court's fee award is unsupported by existing case law, statutory law, or court rule. I can endorse neither the majority's rationale nor this further encroachment on the American Rule. Respectfully, I dissent.

I.

In 1948, this Court was presented with "a choice of philosophies" -- a choice between the English Rule, which allowed for the liberal award of counsel fees to prevailing litigants, and the American Rule, which did not. See State v. Otis Elevator Co., 12 N.J. 1, 26 (1953) (Jacobs, J., dissenting).

We picked the latter, and for good reason. The Court of Chancery at the time "had discretionary power to allow counsel fees in such amounts as appeared to it to be reasonable." Alcoa Edgewater Fed. Credit Union v. Carroll, 44 N.J. 442, 446 (1965). That predictably led to growing abuses. With no outer cap on

2

fee awards, save a narrow exception, some members of the bar received excessive allowances.  Ibid.  Faced with the looming prospect of an outsize fee award, "prospective litigants with presumably just causes had been discouraged from instituting actions in equity."  Ibid.; see also Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167 (1960) (recognizing that Court of Chancery practice "proved unduly onerous upon litigants and spawned charges of favoritism").

Through court rule, this Court, accordingly, placed New Jersey firmly in the American Rule camp, "barring counsel fees except . . . 'as provided by these rules or by law with respect to any action, whether or not there is a fund in court.'"  John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472, 475 (1950) (quoting and upholding then-Rule 3:54-7 as permissible use of Court's rulemaking authority).  When, in 1950, the Legislature attempted to roll back the new limits on fee awards, it was met with Governor Driscoll's veto pen.  The legislation, according to the Governor, "would revive an unhappy practice that has been generally repudiated."  Otis Elevator Co., supra, 12 N.J. at 27 (Jacobs, J., dissenting) (quoting Veto Messages of Hon. Alfred E. Driscoll, Governor of New Jersey 76 (1950)).

The current Rule 4:42-9 represents New Jersey's adherence to the American Rule.  That rule has served us well.  Ensuring that litigants are not discouraged from pursuing redress in our

3

courts because of the fear that, if unsuccessful, they must carry their opponent's legal fees, the American Rule promotes "[u]nfettered access to the courts for all citizens with genuine legal disputes." In re Estate of Lash, 169 N.J. 20, 43 (2001) (Verniero & LaVecchia, JJ., dissenting) (quoting Neal H. Klausner, Note, The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility, 61 N.Y.U. L. Rev. 300, 304 (1986)). Put simply: "[W]hile the English Rule focuse[s] on providing full compensation to the winner, the American Rule emphasize[s] equal access to justice." Ibid. (quoting Mihalik v. Pro Arts, Inc., 851 F.2d 790, 793 (6th Cir. 1988)). The American Rule is also administratively efficient, unburdening our trial courts from continually making "the somewhat arbitrary calculation of the 'reasonable costs' incurred by a prevailing party." Ibid. (quoting Klausner, supra, 61 N.Y.U. L. Rev. at 305).

II.

We held closely to our policy choice against ad hoc fee shifting for nearly fifty years. See, e.g., Grober v. Kahn, 47 N.J. 135, 151 (1966) ("[T]he question whether a fraud or a breach of a fiduciary obligation should warrant imposition of counsel fees is a policy issue which was resolved when our rules of court were formulated. If a change is to be made, it should

4

be made with directness and in relevant terms.  Meanwhile the policy of our rule should be honored.").

Then came Saffer, supra, in which this Court carved out an exception to the American Rule, allowing successful legal malpractice plaintiffs to recover counsel fees.  143 N.J. at 271-72.  Recognizing that the goal of a legal malpractice claim is to place the client in the same position in which he or she would have been had the attorney rendered capable service, the Court held that "a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action."  Id. at 272 (emphasis added).  The fee award was appropriate, the Court reasoned, as part of the "consequential damages that are proximately related to the malpractice."  Ibid.

In Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427 (2001), this Court broadened Saffer to reach claims against attorneys for intentional misconduct.  In that case, an attorney owed a corporation dual fiduciary duties, both as a director and as legal counsel.  Id. at 436-37.  The trial court found that he committed intentional misconduct in his role as counsel and, applying Saffer, ordered a fee award.  Id. at 438-39.  The Appellate Division reversed, finding Saffer inapplicable.  Id. at 440.  To the panel, because the plaintiffs had not succeeded

5

on a malpractice claim, Saffer could not support a fee award. Ibid.

This Court reversed the Appellate Division. Saffer's extension -- from attorney negligence to intentional misconduct -- was based on a simple principle: "[A]n attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care." Id. at 443. It would, this Court said, be an "incongruous result" if a plaintiff could recover counsel fees for attorney malpractice but not for "an intentional violation of a fiduciary duty arising as a result of the attorney-client relationship." Id. at 442. The Court made it a point to highlight that, even in cases of intentional misconduct, establishing "the existence of an attorney-client relationship [is] a prerequisite to recovery." Id. at 443 (emphasis added). That requirement harmonized the Court's holding with Saffer's twin goals of "holding attorneys responsible for professional conduct that causes injury to their clients" and allowing clients to recover "for losses proximately caused by the attorney's improper performance of legal services." Ibid.

The Court closed by emphasizing that breach of a fiduciary duty, alone, did not support the fee award. Although the defendant in Packard-Bamberger owed dual, overlapping fiduciary

6

duties, it was only because he violated his duty to the plaintiff as legal counsel that the fee award was justified. Id. at 443. Had he not assumed that role, and had he not rendered any legal services, "attorneys' fees would not have been appropriate unless authorized by contract, statute, or some other specific rule." Ibid.

Both Saffer and Packard-Bamberger relied on the attorney-client relationship as a condition to a fee recovery in attorney-misconduct cases. Nothing in either of those cases supports the idea that a fiduciary relationship, outside of the attorney-client relationship, can support a fee award. See Lash, supra, 169 N.J. at 34 ("Packard-Bamberger makes clear that the fact that a person owes another a fiduciary duty, in and of itself, does not justify an award of fees unless the wrongful conduct arose out of an attorney-client relationship."). Because there is no attorney-client relationship here, it is plain that neither Saffer nor Packard-Bamberger support the majority's holding.

Neither does this Court's series of fee-shifting cases involving a fiduciary. The first case the majority relies on is In re Estate of Lash, which deserves to be placed in its factual context.

Lash was a surety case; the administrator of an estate misappropriated estate funds. Id. at 24. Fireman's Fund

7

Insurance Company provided the surety bond, protecting the estate against fraudulent actions by the estate's administrator. Ibid. After the administrator's malfeasance, the estate alleged that Fireman's Fund, as surety, was liable not only for the estate's loss but also for counsel fees incurred in proceeding on the bond. Id. at 25.

Relying on surety and tort principles, this Court held that the counsel fees could be charged to the surety. First, the Court determined that the administrator could be liable for the estate's counsel fees in proceeding on the surety bond. Citing to the Restatement (Second) of Torts § 914(2), the Court explained that if a plaintiff has been forced into litigation against a third party because of a tortfeasor's wrongful conduct, the plaintiff can recover those counsel fees from that litigation from the tortfeasor. Id. at 26. The Court concluded that "[t]hose fees are merely a portion of the damages the plaintiff suffered at the hands of the tortfeasor." Ibid. Because the administrator's wrongdoing caused the estate to file an action against the surety, the court reasoned that the administrator is responsible for the estate's counsel fees. Id. at 27-28.

The Court then considered whether Fireman's Fund, as surety, could be liable for those fees. Answering that question in the affirmative, the Court explained that upon breach of an

administration bond, "[t]he surety is required to bear any injurious consequences arising from loss to the estate."  Id. at 28 (quoting 31 Am. Jur.2d Executors and Administrators § 350 (1989)).  The Court held that because the surety was liable to the full extent of the administrator's damage, its obligation included the fees incurred in proceeding on the bond.  Id. at 28-29.

Last, the Court considered whether its fee award violated the American Rule.  It did not, the Court explained, stating that "[t]hose fees do not implicate the American Rule because they were incurred in the litigation on the bond, rather than the litigation against [the administrator]."  Id. at 32.  The Court emphatically declared that its decision was not "an application of Saffer and Packard-Bamberger."  Id. at 33.  Those cases authorized a fee award directly against a defendant-attorney -- a result that, although contrary to the American Rule, "was authorized . . . due to the significance of the attorney-client relationship."  Ibid.  Instead, the Court's fee award in Lash was declared "distinct from Saffer because the fees are damages incurred in litigation other than to establish [the administrator's] liability."  Id. at 34.

Next, the Court decided In re Niles Trust, 176 N.J. 282 (2003).  In that matter, through undue influence, a mother and son, Serena and Salvatore Bono, acting in concert, convinced a

9

wealthy, elderly heiress to name Salvatore executor of her will and trustee of her revocable trusts.  Id. at 288-89.  "With his newfound power, [Salvatore] embarked on a sixteen-month looting spree of [the] estate."  Id. at 289.  Our Court faced the question of whether the estate should be reimbursed for the counsel fees it incurred in the litigation against Salvatore and Serena.  Id. at 296.  A three-justice majority, over a dissent, created another exception to the American Rule.  Id. at 297.  This time, the Court's majority had to confront directly the strictures of the American Rule, because, as the majority acknowledged, to charge the fiduciary with counsel fees "is tantamount to charging the losing parties with the prevailing parties' counsel fees."  Id. at 296.

But, to the Niles majority, the interests of equity demanded the creation of a new exception to the American Rule. The Court compared the fiduciary relationship there to the attorney-client relationship in Saffer and Packard-Bamberger: "Like an attorney who commits . . . undue influence while representing a testator, settlor or an estate, a trustee of an estate who exercises undue influence over a testator intentionally has breached a fiduciary relationship in a manner at least as egregious as the administrator's intentional wrongdoing in Lash, or an attorney who has intentionally breached his fiduciary duty."  Id. at 298.  The Court therefore

10

held that "when an executor or trustee commits the pernicious tort of undue influence, an exception to the American Rule is created that permits the estate to be made whole by an assessment of all reasonable counsel fees against the fiduciary that were incurred by the estate." Id. at 298-99.

However, the Niles majority assured that its holding would not "open the 'floodgates.'" Id. at 299. The majority specifically limited the new exception "to cases in which an executor's or a trustee's undue influence results in the development or modification of estate documents that create or expand the fiduciary's beneficial interest in the estate." Ibid. Emphasizing that "undue influence represents such an egregious intentional tort that it establishes a basis for punitive damages in a common law cause of action," the Court promised that "[t]he exception we have created directly follows from the special status of the undue influence tort." Id. at 300 (emphasis added).

Our Court's unanimous decision in In re Estate of Vayda, 184 N.J. 115 (2005), at least until today, stopped the Court-sanctioned rupture of the American Rule. That case centered on a will dispute between two siblings. The decedent's most recent will named one sibling, Peter, executor of the estate, contrary to all prior versions. Id. at 118. But after the will was admitted to probate, Peter did little to administer the estate.

11

Ibid.  The other sibling, Katherine, sued, alleging that the will was the product of undue influence and that Peter breached his fiduciary duty as executor.  Id. at 119.  The trial court removed Peter as executor, holding that Peter had abandoned his responsibilities as executor.  Ibid.  However, the will was not determined to be the product of undue influence.  Ibid.  Yet the trial court considered the circumstances to warrant the imposition of counsel fees, even without an undue influence finding.  Ibid.

This Court declined to extend Niles to reach a non-attorney executor who was removed because of a breach of a fiduciary duty -- but notably not because of a finding of undue influence.  Id. at 123.  The court rules provided a specific remedy:  in certain probate actions, Rule 4:42-9(a)(3) allows an award of attorneys' fees "to be paid out of the estate" and not another source.  Id. at 124.  That Katherine would not be made entirely whole -- part of the cost of maintaining the action against Peter would be paid from her portion of the estate -- was "insufficient impetus to warrant a further exception to the American Rule, one to which we have repeatedly averted as 'a well-established feature of our jurisprudence.'"  Ibid. (quoting Lash, supra, 169 N.J. at 42).  In a footnote, the Vayda unanimous opinion commented on the scope of Niles:  "Had Katherine established that the decedent's will was the result of undue influence, Peter's

12

performance as executor would have been squarely governed by the holding of In re Niles, supra." Id. at 123 n.4.  Thus, the Vayda Court took the Niles Court at its word and pointedly declined to extend its reach beyond the context of undue influence by an executor or trustee fiduciary.

III.

From Packard-Bamberger, Lash, and Niles, the majority in this matter draws the ultimate conclusion that an attorney, acting in a fiduciary capacity to a non-client with regard to an escrowed item, who engages in any intentional misconduct is liable for attorneys' fees.[7]  However, those cases do not support that proposition at all.  If this Court wishes to use its authority to modify the court rules, through judicial decision, and create a new exception to the American Rule -- though in my view unwise -- it certainly can.  See State v. Clark, 162 N.J. 201, 205 (2000) ("[T]he Court's authority to engage in rule making includes the exclusive power to establish or modify Court Rules through judicial decisions.").  However, the majority should abandon any pretense that today's result flows naturally from our prior cases, when it clearly does not.  Because Packard-Bamberger made it a point specifically to explain that a

---

[1] Despite the majority's declaration, there is no finding of intentional misconduct in this record.  The jury verdict was based on negligence.

13

fiduciary duty, apart from an attorney-client relationship, could not justify a fee award, it provides no support for the majority's decision. Because Lash did not, according to its majority opinion, directly confront the American Rule, it provides no support for the majority's decision. And because Niles was limited to intentional fiduciary misconduct surrounding the "pernicious" tort of undue influence, it also provides no support for the majority's decision. Vayda unanimously upheld those distinctions, and they were ratified in dicta by In re Estate of Stockdale, 196 N.J. 275, 306-07 (2008).

With today's decision, credibility dissipates from the Niles Court's breezy assurance that its new exception to the American Rule would not open the floodgates because its holding would be strictly limited to the tort of undue influence. It was not a serious limitation then. See Niles, supra, 176 N.J. at 304 (LaVecchia, J., dissenting) ("Once the Court decides that it can pick and choose from among individual cases when to deviate from the traditional requirement that there must be a statute, rule, or contract allowing an award of counsel fees, there is no discernible difference between fees in a case of fraud by a trustee and fees in the case of any other intentional tort."). The majority's holding, in effect if not in its words, undercuts reliance on that facade today.

14

In terms of our jurisprudence, it is unclear what to make of the breadth of the majority's decision.  Although the majority's holding describes the fee-shifting expansion in terms of the case's factual context -- attorneys acting as a fiduciary in an escrow setting -- the analysis blurs two distinct analytic lines of case law.  Either the majority is expanding the Saffer and Packard-Bamberger precedent by allowing fee-shifting against attorney defendants to extend now to non-client relationships,[8] or the majority is no longer limiting fiduciary fee-shifting to the singular context of undue influence claims.  The former is narrower in its likely future impact because it affects only lawyers, as a class of defendants, and therefore does less

---

[2] Implicit in the majority's determination is an unresolved question:  what is the theoretical underpinning to Saffer and Packard-Bamberger that led to fee-shifting for clients in attorney-misconduct litigation against their former lawyer?  Did the Court initially go down that path on the rationale that fees spent to prosecute legal malpractice actions are consequential damages?  Or, was Saffer and Packard-Bamberger fee-shifting based on the special considerations inherent in the lawyer-client relationship, over which the Court has supervisory control.  The more solid rationale is the lawyer-client basis.  Both decisions were firmly rooted in the attorney-client relationship.  Saffer mentions the consequential damages angle, but it is not its takeaway principle.  In my view, one should not read out of the Saffer and Packard-Bamberger opinions all of their limiting language about the attorney-client premise to their holdings.  And subsequent decisions have since emphasized the limiting principle to those holdings. If Saffer and Packard-Bamberger are read otherwise, the consequential damages theory -- untethered to the attorney-client justification for fee-shifting in such relationships -- broadly undercuts the American Rule and can be stretched to an extensive range of claims.  See infra at ___ (slip op. at 19).

15

damage to the American Rule.  But it does treat attorneys worse than all others who may act in an escrow capacity, and other non-lawyer people and entities do perform escrow responsibilities.  Further case law will tell whether the line of distinction will remain fixed at lawyers acting as escrows. However, the majority's emphasis on intentional conduct in its fee-shift rationale in this matter could portend future fee-shift requests from others injured by anyone who was charged with acting in a fiduciary capacity.  And that risks a much broader exception to the American Rule, one that would expose a host of actors to new, expanded liability.

Arising in a vast array of factual settings, fiduciary relationships are many:  doctors to their patients; agents to their principals; partners to their other partners; corporate officers to their shareholders; brokers, including insurance, real estate, and securities brokers, to their clients; and public officials to their constituents.[9]  That list is just a

---

[3] See Howard v. Univ. of Med. & Dentistry of N.J., 172 N.J. 537, 547 (2002) (noting fiduciary relationship between doctor to patient); Hirsch v. Schwartz, 87 N.J. Super. 382, 389 (App. Div. 1965) ("Where a principal-agent relationship exists, . . . it follows that the agent as a fiduciary was required to exercise good faith in his relationship with his principal[.]"); Neustadter v. United Exposition Serv. Co., 14 N.J. Super. 484, 493 (Ch. Div. 1951) ("Each partner stands in a fiduciary relationship to every other partner."); Eliasberg v. Standard Oil Co., 23 N.J. Super. 431, 441 (Ch. Div. 1952) ("The directors of a corporation are, of course, fiduciaries, and in their

16

sampling, as "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." F.G. v. MacDonnell, 150 N.J. 550, 563 (1997) (citing Restatement (Second) of Torts § 874 cmt. a (1979)). If read broadly, the majority's holding could be interpreted as opening all fiduciary actors to liability for fee awards so long as they engage in intentional misconduct. If so, it would take significant effort by the Legislature to unravel the potential fee-shifting cracked open for argument by the majority.

To be clear, as escrow agents, there is no doubt that defendants here owed a fiduciary duty to Innes -- the client of their adversary. See In re Hollendonner, 102 N.J. 21, 26 (1985)

---

dealings with the corporation and the stockholders the utmost fidelity is demanded."), aff'd, 12 N.J. 467 (1953); Aden v. Fortsh, 169 N.J. 64, 78 (2001) ("Insurance intermediaries in this State must act in a fiduciary capacity to the client . . . ."); Silverman v. Bresnahan, 35 N.J. Super. 390, 396 (App. Div. 1955) (noting settled nature of fiduciary relationship between real estate broker and property owner); McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 767 (3d Cir. 1990) (signaling similar fiduciary obligation for stockbrokers); Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474 ("The members of the board of chosen freeholders and of the bridge commission are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve."), cert. denied, 344 U.S. 838, 73 S. Ct. 25, 97 L. Ed. 652 (1952).

17

("It is well settled that an escrow holder acts as an agent for both parties."). They breached that duty when they turned over the child's passport without Innes's permission in this ongoing contentious divorce and custody proceeding. Although they are attorneys, defendants were not Innes's attorneys, taking this appeal out of the attorney-client realm of Saffer and Packard-Bamberger. And they surely did not commit the undue influence tort, making Niles equally inapplicable. Without an attorney-client relationship, and without an undue influence finding, a fee award cannot be justified under present law. That leaves only a painful but nonetheless straightforward breach of a fiduciary responsibility, which our law, until today, held insufficient to shift fees. See Packard-Bamberger, supra, 167 N.J. at 443 ("[I]f [defendant] had not been counsel to [the corporation], his fiduciary duty to [that corporation] would have arisen solely from his status as a director. He would not have rendered any legal services to the corporation and, therefore, attorneys' fees would not have been appropriate unless authorized by contract, statute, or some other specific rule.").

The majority has therefore extended our law beyond Saffer, beyond Packard-Bamberger, beyond Lash, and beyond Niles -- an extension, and further erosion of the American Rule, that I resist.

18

It is true that absent an award of attorneys' fees, the prevailing party in this breach-of-a-fiduciary-responsibility litigation is not fully compensated for the loss suffered. But that is true in practically every context in which damages must be recovered through legal action. In any standard contract or tort claim, the cost of maintaining the action prevents a prevailing plaintiff from realizing the full measure of damages. Since its inception, the American Rule has rejected the idea that counsel fees are necessary to fully compensate the prevailing party in litigation. See Thomas D. Rowe, Jr., The Legal Theory of Attorney Fee Shifting, 1982 Duke L.J. 651, 657 (1982) ("[T]he American [R]ule's effect of reducing a successful plaintiff's recovery by the amount of his lawyer's fee conflicts with the make-whole idea underlying much of the law of remedies."). The majority's policy choice in this matter tosses aside that basic premise.

Finally, the way in which the majority reaches its result deserves mention. The majority's holding, permitting the possibility of fee-shifting in this attorney-breach-of-an-escrow-fiduciary-duty matter, is grounded on intentional misconduct by an attorney in respect of fulfilling escrow duties. In doing so, it may be surmised that the majority recognizes that even under its interpretation of the law, fees would not be available based on negligent conduct. However,

this case was presented by experienced counsel and was submitted to the jury based on negligent conduct. The majority now makes this case a different one than that which was tried by the parties and counsel. There may have been considered consequences, including insurance availability, which strategically led to the decision to try the case in the manner that the parties and all counsel presented it. In my view, this Court should refrain from refashioning the trial choices of the parties and professionals who handled this matter.

## IV.

To be sure, there is good cause to be dismayed at the fiduciary breach here. It had tragic consequences -- separating a young child from her father. But a desire to do equity in a sympathetic case cannot substitute for adherence to our Court's policy choice that the administration of justice is best served when parties to litigation bear their own counsel fees, a policy that dates back almost as far as the institution of our modern Court itself. That policy holds that absent statute, court rule, or contract authorizing fee-shifting, counsel fees are not recoverable as damages. Because the "policy of our rule should be honored," Grober, supra, 47 N.J. at 151, I respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO.   A-16                         SEPTEMBER TERM 2014

ON CERTIFICATION FROM         Appellate Division, Superior Court

PETER INNES and VICTORIA
SOLENNE INNES, by her
Guardian PETER INNES,

      Plaintiffs-Respondents,

             v.

MADELINE MARZANO-LESNEVICH,
ESQ., and LESNEVICH &
MARZANO-LESNEVICH, Attorneys
At Law, i/j/s/a,

      Defendants/Third-Party Plaintiffs-
      Appellants,

             v.

MITCHELL A. LIEBOWITZ, ESQ.,
PETER VAN AULEN, ESQ., and
MARIA JOSE CARRASCOSA,

      Third-Party Defendants.

DECIDED              April 26, 2016

        Chief Justice Rabner               PRESIDING

OPINION BY       Justice Solomon

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY     Justice LaVecchia

| CHECKLIST | AFFIRM AS MODIFIED/REMAND | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | | X |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | ------------------ | |
| JUSTICE FERNANDEZ-VINA | ------------------ | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | | X |
| TOTALS | 3 | 2 |